BURT VS KIMBELL.

*As to a deed of gift of a slave, made in the State of North Carolina.*

1. Where a deed of gift of a slave, was made by one to his daughter in the State of North Carolina in 1810, which did not appear to have been attested, and proved or ac-- knowledged, and recorded, as required by the act of that State, passed in 1806; and possession was retained by the father, until his death in Alabama:—in detinue by the husband of the daughter, it was held—
First—That the validity of the gift of the slave, depended upon the laws of North Carolina, where it was made.
Secondly—That the requirements of these laws, not having been complied with, the gift of the slave was void, as between the donor's representative, and those claiming under the donee.

On a writ of error to the Circuit Court of Morgan.

In this case, Kimbell commenced an action of detinue, against Burt, who was the administrator of Thomas Peyton, for the recovery of a slave, named Abraham. The defendant plead, *non detinet*, and the statute of limitations, and a verdict was rendered for the plaintiff.

On the trial, the plaintiff proved a demand: also, that he was the husband of Sally, the daughter of Thomas Peyton, to whom he proposed showing that a gift of the slave in controversy, had been made by her father. The plaintiff proved that in eighteen

5·P.　　18

hundred and ten, Thomas Peyton gave the negro Abraham, with others, to Sarah Payton, the plaintiff's wife; and that he executed a deed therefore, which he told the witness afterward, he had burned; and in which he reserved to himself, a life estate.   He also proved, that Thomas Peyton lived in the State of North Carolina, until the year eighteen hundred and nineteen or twenty, when he removed to Alabama, where he died in eighteen hundred and thirty-three.

The defendant gave in evidence, an authenticated copy of a statute of the General Assembly of the State of North Carolina, passed on the tenth day of December, eighteen hundred and six; and which was in the following words, to wit:

"An act declaring what gifts of slaves shall be valid.   For the prevention of frauds.

"Section 1.  Be it enacted by the General Assembly of the State of North Carolina, and it is hereby enacted by the authority of the same,—That no gift hereafter to be made of any slave or slaves, shall be good or available, either in law or equity, unless the same shall be made in writing, signed by the donor, and attested by at least one credible, subscribing witness: neither shall such gift be valid, unless the writing, by which the title of any slave or slaves is transfered, shall be proven or acknowledged, as conveyances of land, and registered in the office of the public register of the county, where the donee resides, within one year after the execution thereof, if the donee be in the actual possession of the slave or slaves so given and transfered: but if under any special agreement, made at the

BURT *vs* KIMBELL.

time of the gift, the donor shall remain in posses-
sion of the slave or slaves so given, then the wri-
ting transfering or conveying the same slave or
slaves, shall be proven or acknowledged as afore-
said, and registered within the same time, in the
county where the donor resides.

"Section 2. And be it further enacted, That on all
trials, where any such writing shall be introduced,
to support the title of either party, the due and fair
execution of such writing, shall be proved by a wit-
ness, subscribing and attesting the execution of
such writing; but if such witness shall be dead, or
removed out of the State, then the probate or ac-
knowledgement and registration of such writing,
may be given in evidence.

"Section 3. And be it further enacted, that every
person claiming title to any slave or slaves, by vir-
tue of any such parol gift heretofore made, shall
commence and prosecute his or her suit for the
same, within three years from the passing of this
act, otherwise the same shall be forever barred:—
Provided however, that if any such person or per-
sons, be at the time of passing this act, within the
age of twenty-one years, *non compos mentis, feme
covert*, imprisoned or beyond seas,—such person or
persons, shall within three years next after full age,
coming of sound mind, discoverture, enlargement
out of prison, or return from beyond seas,—com-
mence and prosecute his or her suit, for any such
slave or slaves, claimed by force of such parol gift,
and not afterwards:—Provided, that where any per-
son shall have put into the actual possession of his
or her child or children, any slave or slaves, and

the said slave or slaves, shall remain in the possession of such child or children, at the time of the death of such person, he or she, dying intestate, such slave or slaves, shall be considered as an advancement to such child or children, and be regulated by the laws now in force, relating to advancements made to children by a parent in his life time.

"Section 4. And be it further enacted, that this act shall commence, and be in force, from and after the first day of April next."

This with proof, that the said slave had been always in the possession of Peyton, till his decease, was all the testimony adduced in the cause.

The defendant's counsel, moved the Court to instruct the jury, that said Kimbell, on this testimony, had no cause of action alone, but that to maintain the same, his wife should have joined: which the Court refused.

The defendant's counsel then requested the charge—that if the reservation of a life estate, in said negro, was contained in said deed of gift, no interest in said slave passed to said *Sally :* which the Court also refused.

It was then requested of the Court to charge—that if there was a reservation of said negro for his life time, by said Thomas Peyton, then said parol gift was incomplete, and conferred no title to said Sally Peyton, plaintiff's wife. The Court refused so to charge; but instructed the jury, that said reservation did not invalidate the gift.

Defendant's counsel also asked the Court to charge—that no title, according to the laws of North

Carolina, passed by said alleged gift, unless a deed of gift was executed and attested by a subscribing witness, and recorded.   The Court refused, and informed the jury, that the gift, if proved, though by parol, was valid.

To all which the defendant excepted, and prosecuted a writ of error here.

Argued by *M'Clung* for the plaintiff in error, and by *S. Parsons*, contra.

HOPKINS J. C.—This was an action of detinue for a slave.   It was brought by the defendant in error, against the plaintiff.   Upon the trial in the Circuit Court of Morgan, it was proved that one Thomas Peyton, deceased, the father of the wife of Kimbell, in eighteen hundred and ten, and in the State of North Carolina, where he then resided, made a deed of gift of the slave in controversy, to Kimbell's wife, then of the age of seventeen, unmarried and a member of the family of her father. The actual possession of the slave was retained by Thomas Peyton, till his death, in this State, in the year eighteen hundred and thirty-three; and Burt is the administrator of the goods and chattels of the donor, with his will annexed.   There was no other proof of the delivery of the slave to the donee, than that her father took the hand of the slave and delivered him into the hand of his daughter.

It does not appear that the deed was delivered or attested by a subscribing witness, or that it was ever registered in North Carolina, and it was proved

by a witness for Kimbell, that the donor said afterward, he had burned it.

The defendant in the Circuit Court, gave in evidence, a transcript, properly authenticated, of a statute of North Carolina, enacted in December, eighteen hundred and six, and entitled, "an act, declaring what gifts of slaves shall be valid,—for the prevention of frauds."

Among other instructions given and refused by the Circuit Court, and to which the plaintiff in error excepted, are the following : His counsel moved the Court to instruct the jury, that no title, according to the laws of North Carolina, passed by the alleged gift, unless a deed of gift were executed, attested by a subscribing witness and recorded; the Court refused the instruction, and instructed the jury, that the gift, if proved, though a parol one, was valid.

The assignments of error in this Court, present the question, whether the Circuit Court, erred in refusing or giving the instructions, which have been mentioned.

The alleged gift was made after the passage of the act of eighteen hundred and six, and if it were intended by that act, that no gift made after its enactment, should be valid, except such as might be made in the mode, and with all the formalities prescribed by the statute, the gift in this case was void.   That the validity or invalidity of the gift, depends upon the law of the State, where it was made, no one doubts.   The object of every statute of frauds and perjuries, is to protect third persons against conveyances or contracts, made fraudulent-

ly by the parties to them. Such conveyances and
contracts are held to be valid between the parties,
whether the statute of frauds of the country, in
which they are made, contain or omit an enact-
ment, that they shall be binding between the par-
ties and their representatives. The legislative pow-
er of a country is competent to prescribe that all
such contracts, in future, shall be void, as well be-
tween the parties as between them and the credi-
tors or subsequent purchasers of the grantor or do-
nor. Without any words for the purpose, the ef-
fect of such an act, would be extended to the par-
ties to the contracts, if the intention of the act re-
quired it.

The title of the act of eighteen hundred and six,
shows clearly, that the legislature which passed it,
intended to prescribe the only mode in which a va-
lid *gift* could be afterward made. Whatever the
*lex loci* requires to make a valid gift, must be done,
or the property will not be transfered from one
party to the other. By the statute of eighteen hun-
dred and six, it was enacted that no gift of a slave,
made after its passage, should be good, either in
law or equity, unless the same should be made in
writing, signed by the donor, attested by at lest
one credible witness, and proved or acknowledged
and recorded as the act directs. Another enact-
ment of the same statute, required every person
who had a claim to any slave in virtue of any parol
gift, made before the passage of the act, to com-
mence his suit for the same, within three years
from the passage of the act; or if such person was
then under any of the disabilities mentioned in the

act, within three years next after any such disability might cease. The effect of a failure to bring a suit upon such a gift, within the time limited, was by the terms of the act, to be a bar to the action. It was also provided by the act, that where any person shall have put into the actual possession of his child, a slave or slaves, and the said slave or slaves, shall remain in the possession of such child at the time of the death of such person, he dying *intestate*, such slave or slaves, shall be considered an advancement to such child, and be regulated by the law relating to advancements.

From the act, we think it is obvious, that when the gift in this case is alleged to have been made, no valid gift of a slave could be made by parol, or in any other mode than in writing, signed by the donor, attested, and proved or acknowledged and recorded, as the statute prescribed. The wife of Kimbell, had not such a possession of the slave in her father's life time, nor at his death, as to entitle her to the property as an advancement. Our construction of the act agrees with that which the statute has received from the Supreme Court of North Carolina.*—*Smith et ux vs Tates.*†

We are of opinion the Court below erred in giving and refusing the instructions, which we have noticed.

The judgment is reversed, and the cause remanded.

*3 Mur. Rep. 135.

†B. & Dev. Rep. 302.