# WINDSOR COUNTY,

## FEBRUARY TERM, 1867.

[Continued from *ante* page 412.]

---

WARREN C. FRENCH, *Administrator of Susan W. Raymond v.* ISAAC
M. RAYMOND.

*Donatio causa mortis. Accord and Satisfaction.*

Requisites stated which are necessary to constitute a *donatio causa mortis.*

S. had sent money at different times to the amount of $100. to her uncle, the
defendant, to put into the saving's bank for her, which he had done, and had
always kept the bank book in his possession. She came to his house, was taken
sick, and died. Previous to her death, but after she had despaired of recovery,
she said she gave her money to her uncle; wanted him to have it, &c. It did not
appear that she delivered the bank book or anything else to him. *Held,* that
this did not constitute a valid *donatio causa mortis.*

Her father, after her decease, and not long before his decease, voluntarily and with-
out consideration, signed and delivered to the defendant, a writing as follows':
"As I am perfectly satisfied with Isaac M. Raymond's" (the defendant) "pro-
ceedings about Susan's affairs, I shall claim nothing of her earnings hereafter."
*Held,* that this did not amount to an accord and satisfaction.

ASSUMPSIT for money. The case was referred. At the May
Term, 1866, BARRETT, J. presiding, a *pro forma* judgment was rend-
ered, on the report of the referee, for the plaintiff, for the sum found
due and the costs,—to which the defendant excepted. The referee
found that Susan W. Raymond was the daughter of Wilder Ray-
mond. Her mother died and her father married again, and after
wards, when Susan was thirteen years old, she went to live with her

uncle, Isaac M. Raymond, the defendant. In September, 1845, he gave her money and clothes without expectation of being paid. She went to Massachusetts to work, and sent up money for said Isaac to put into the savings bank for her, which he did to the amount of about $100., and the question in the case is whether she so gave this money to the defendant, just before her decease, as to constitute a *donatio causa mortis.* It appeared that the bank book was kept by the defendant, in a drawer, with his papers, and was always in his possession. She returned to the defendant's house in June, 1856, and died there, unmarried, Sept. 19th, 1856, at the age of 32, and her father was her sole heir. He died in November, 1864. The evidence upon which the defendant relied to support his claim is fully stated in the opinion of the court.

The plaintiff was appointed administrator upon the estate of said Susan, January 19th, 1865. Objections were taken to certain testimony, concerning which the facts need not be here stated.

*Washburn & Marsh* for the defendant.

*Converse & French* for the plaintiff.

The opinion of the court was delivered by

PIERPOINT, Ch. J. The questions in this case arise upon a report of a referee, and as no claim is made by the plaintiff to any of the property referred to in the report, except the money in the savings bank, the only questions for us to consider have reference to that money.

The defendant claims the money as a gift from the intestate Susan W. Raymond, and insists that it was so made, and under such circumstances, that it constituted a *donatio causa mortis* and as such was a valid transfer of the property to him.

To constitute a *donatio causa mortis* certain requisites are necessary. Judge STORY says "It is properly a gift of personal property, by a party who is in peril of death, upon condition, that it shall presently belong to the donee, in case the donor dies, but not otherwise." Story, Eq. 611. On page 613 he says: "There can be no valid

donation *mortis causa*.  1st. Unless the gift be with a view to the donor's death.  2d. Unless it be conditioned to take effect only on the donor's death by his existing disorder, or in his existing illness; and, 3d. Unless there be an actual delivery of the subject of the donation."  These requirements are recognized by all writers upon the subject, and are not questioned in this case ; the only controversy here being whether the evidence in the case, and facts found by the referee, bring it within the rules prescribed.

It is conceded that at the time the alleged gift was made, the intestate was sick, and did not expect to recover, that what she said, was said in view of anticipated death, and that she died of the same illness, soon after.  The only question to be considered then is : was there such a gift?  And if so, was there such a delivery of the subject matter of the gift, as to constitute it a valid *donatio causa mortis?*

In considering these questions we will lay aside all the evidence introduced by the plaintiff bearing upon them, and look only at the evidence introduced by the defendant.  Sylindia Raymond, a daughter of the defendant, a witness, says, in speaking of the intestate : Her money she gave to my father ; she said it was all father's, and she had not half enough to pay what she wanted ; she said the money was all his and wanted him to do so and so.  Dr. Richard, the attending physician, testified that the last time he was there, she told him she was going to have a monument; her uncle (defendant) would get it, and would pay him (the witness), and he understood from her, that the family were to have what she had left.  This is all the evidence the defendant introduced tending to show a gift, or the character of it.

If this can be upheld as a valid *donatio causa mortis*, then it is competent for any person during their last sickness, and in expecta tion of its fatal termination, to dispose of all their personal property by word of mouth, without any other act or ceremony, and the statute of wills, so far as personal property is concerned, would become wholly nugatory.

It is said the savings bank book was a proper subject of such a gift.  What would have been the effect, if she had given the bank book, and the money in the bank, and had delivered the book to the

defendant as containing the evidence of her claim upon the bank, it is not necessary now to determine, as there is not the slightest evidence tending to show that she delivered the book or anything else to the defendant, but on the other hand the evidence of the defendant shows that she never had the book, but that it always remained in the defendant's possession, and there is no evidence tending to show that she had any knowledge whatever of the existence of such a book.

As there is an entire want of evidence tending to show a delivery, which is one of the most essential ingredients to constitute a gift of this character, and as the gift cannot be sustained against the plaintiff on any other ground, the referee was bound, as a matter of law, to decide against the claim of the defendant.

Such being the case, if the referee admitted evidence tending to rebut the evidence of the plaintiff that was inadmissible, the report should not be set aside for that reason, for if the evidence had been rejected, the legal result must have been the same.

But it is said there was an accord and satisfaction between the defendant and Wilder Raymond in respect to this whole matter, the said Wilder at the time being the sole heir of the intestate, and no administration having been granted on her estate.

It appears from the report that the defendant introduced evidence tending to show that soon after the death of the intestate, Wilder Raymond went to the house of the defendant, and upon that and upon other occasions when they were together, the subject of the intestate's affairs, and the disposition that the defendant had made of the property that she left, was all talked over, and the said Wilder expressed himself entirely satisfied with what had been done, and declared his determination not to claim or receive any of the property left by his daughter, the intestate, and upon one occasion said he wanted the whole matter settled, and said he wanted a receipt written, that would close up all matters, and dictated the terms of a writing, which was written by the witness, signed by said Wilder, and delivered to the defendant. The writing is as follows: "As I am perfectly satisfied with Isaac M. Raymond's proceedings about Susan's affairs, I shall claim nothing of her earnings hereafter."

(Signed)　　　　　　　　　　WILDER RAYMOND.

French Adm'r *v.* Raymond.

Conceding all to be true that the defendant's testimony tended to prove, does it amount to an accord and satisfaction as between Wilder Raymond and the defendant? There was no controversy, dispute or misunderstanding between them that was adjusted. There was no settlement of any claim growing out of Susan's affairs. There was nothing paid by the defendant, and nothing received by the said Wilder in satisfaction of any claim he might have against the defendant, or upon any property that was left by Susan. The declarations made by said Wilder that he was satisfied with the proceedings of the defendant in regard to Susan's affairs, and that he would claim no part of the property that she left, were purely voluntary, and based on no consideration whatever. They were of no binding force.

Wilder Raymond could, at any time, have instituted legitimate proceedings to obtain such property as he was entitled to as the heir of Susan, and such declarations would have been of no effect, to bar his success; they would be evidence tending to show that he had no claim in fact, but beyond that they could be of no avail. Much less can they operate as a bar to the recovery of this plaintiff who sues as the administrator of Susan's estate.

This view of the case disposes of all questions as to the admissibility of the evidence offered by the plaintiff to rebut the defendant's testimony as to the declarations of said Wilder.

It is quite clear that the claim is not barred by the statute of limitations. This point is not seriously urged by the counsel for the defendant.

As to the amount of the property in the defendant's hands belonging to the estate, the referee is the sole judge of the weight of the evidence offered on the point, and his finding is conclusive.

As upon the whole we see no occasion to set aside the report of the referee, it becomes unnecessary to consider whether this court has the power so to do, or not.

Judgment of the county court is affirmed.