FRANKLIN M. DREW, admr. *vs.* MARY HAGERTY, and trustee.

Androscoggin. Opinion January 18, 1889.

*Gift. Delivery. Donatio causâ mortis and inter vivos. Imperfect gift.*
*Bank deposit. Presumption.*

| 81 | 231 |
| 85 | 146 |
| 85 | 233 |
| 81 | 231 |
| 88 | 127 |
| 88 | 153 |
| 88 | 518 |
| 81 | 231 |
| 95 | 549 |
| 81 | 231 |
| 106 | 433 |

The gift of a savings bank book, *causâ mortis*, to be valid, must be accompanied by an actual delivery from the donor to the donee, or to some one for the donee; the delivery must be made for the express purpose of consummating the gift; and a previous and continuous possession by the donee, is not sufficient.

A delivery, in such case, becomes necessary to distinguish it from a legacy, since without delivery, an oral disposition of property, in contemplation of death, can be sustained only as a nuncupative will.

Delivery, followed by possession, is an essential part of a gift.

A gift, *inter vivos*, to be effectual, must be immediate and absolute, accompanied by actual delivery. Words alone will not constitute delivery. There must be some act or something done. With the words there must be some accompanying act, some handing over, some unequivocal thing done and performed, indicating a change of title in the property.

A verbal agreement between husband and wife, that moneys deposited in savings banks, in their joint names, and belonging to them jointly, shall become at the death of either wholly the property of the other, is not an executed contract, and does not convey the property.

Where money is deposited in a savings bank, in the name of a husband, payable also to the wife, the presumption of law would be, nothing else appearing, that the husband was the depositor, because the account is directly in his name, although the money is payable to her.

ON EXCEPTIONS AND MOTION of the defendant to set aside the verdict, and for a new trial.

The action was for money had and received by the defendant by her collection of the amounts due on three savings bank books after her husband's death. The plaintiff sues as administrator on the estate of Daniel Hagerty, the defendant's husband. Verdict was for plaintiff for $2,420.68.

It appeared that said Hagerty, who died January 14, 1884, deposited in 1879 moneys in three savings banks and which at the time of his death amounted to about $3,000. One of the deposit books bore the indorsement, "payable also to Mary Hagerty," another was in the names of "Daniel and Mary

Hagerty," and the third was issued to "Daniel or Mary Hagerty" and bore the indorsement "pay either in any event."

On January 21, 1884, the defendant withdrew the sum due on the first book amounting to $1,186.80 and surrendered the bank book, and on the 24th day of the same month caused the sums due on the other books amounting to $1,196.39 and $595.51 respectively to be transferred to herself and son, by whom the money was subsequently withdrawn and the bank books surrendered.

At the trial, the defendant relied upon three defenses: First, that a portion of the funds deposited was hers, because they constituted the savings of both her husband and herself; second, that subsequent to the deposit, an agreement was made between her husband and herself, that whichever one lived the longest should have the money; third, that the money was given to her by her husband on the day of his death. These several claims were consolidated, so that they were presented in the following form: that when she and her husband began their married life, they agreed to save their earnings; that they did this; that the money represented their joint savings; and that the gift claimed, on the day of her husband's death, was the final consummation of a course of action tending to show an intention to give.

The defendant not being satisfied with the instructions of the court upon these classes of gifts, the second and third *supra*, excepted thereto, and to its instructions, in the matter of delivery.

On this branch of the case the presiding justice instructed the jury as follows:

"Suppose, for the sake of the argument, that Daniel deposited the money, deposited it because it was his, and that it was his when he deposited it, and that these savings bank books were his at some time. Then the question arises, did he divest himself of that ownership? Did he effectually give these books to the defendant, his wife, in any way? She claims, as a part of this case, that he did, either in one of two ways or in both of those ways: First, that he gave her the books while he was well; secondly, that he gave the books to her on his death bed, while he was sick and in peril of death.

Now it becomes necessary to explain to you how such a thing as that may be, and then it is for you to say whether it is, or not, or was. The first of these gifts, giving a thing by one person in good health to another person in good health, is called a gift *inter vivos*, or gift between living persons. The second is called a gift *causâ mortis*, a gift in prospect of death. An essential difference is this: one is an absolute gift, an absolutely executed gift; the other is a conditionally executed gift, conditional upon the death of the giver. That is, the law describes a gift thus because a party is dying, or in prospect of dying and does die afterwards of that sickness. It is a perfect gift in every respect except that it goes for nothing if the party gets well; it is conditional in that respect. A gift among the living, so called, goes into immediate and absolute effect. That is the difference. In either case the subject of the gift must be certain, definite. In either case, also, there must be a delivery. Without a delivery, into actual possession of the person to whom given, title does not pass. Delivery is essential. Without actual possession the title does not pass to the donee. A mere intention to give, a naked promise to give, a talk about giving, without some act to pass the property, is not a gift. There rests a chance all the time, you see, of repentance, *locus penitentiae*, that lasts as long as the gift is imperfect or incomplete. The delivery must be actual, it must be as complete as the nature of the property is susceptible of. Of course savings bank books are susceptible of manual delivery. I may pass them from my hands to yours, Mr. Foreman. The gift might be of ponderous articles of personal property that could not be delivered in that way. They must be actually delivered in a manner as far as the property is susceptible of it. Delivery may be made by an agent. If I want to give a thing to you I may direct my agent to hand it to you; but the donee cannot be my agent to perfect the delivery; if I give to you, you cannot be my agent to give it from me and to take it for yourself.

Mere words are not enough to constitute delivery; there must be some act, or something done; there must be words and accompanying act, some handing over, some unequivocal thing done and performed. These are general rules.

Now to come a little nearer to the matter in hand, if I have not already hit it. A savings bank book may be delivered by passing it over, by handing it to the donee, accompanied by words expressing gift. The words and the act must in effect accompany each other, nearly enough, at any rate, to be one transaction. If the property given be at the time already in the possession of the donee, the donor's saying to the donee, 'you may have it,' or 'you may keep it; it shall be yours,' does not pass the property, in the case of a gift *causâ mortis ;* there is nothing done as a part of the transaction. That matter would consist of words only. In that case there may be intention, but the intention is not carried into effect; the gift is not consummated by any actual or effectual delivery, not, in such case by any delivery. That would be the rule, as I say, in the case of a gift in apprehension of death. The rule would not, under some circumstances be quite so stringent in the case of a gift *inter vivos*, that is, a gift where the parties are well, as to delivery, and you will see the reason of the distinction as I will endeavor to explain to you. In case of a gift *inter vivos*, where the parties are well, where the property is passed into the possession of the donee before the gift and has been held by him in a manner indicating a change of title in the property, and a recognition of the donee's title by the donor, proof of actual manual tradition, that is, a passing over of the property by the one to the other, by the hands of one to the hands of the other, at the time of the making of the gift, may be dispensed with. Now a case in this state where that was settled was just this : A man had the notes of another in his possession. That other person was in the habit of paying small sums of interest often on the notes. That person got possession of the notes, the notes were already in his hands by the consent of the owner of them, and the owner says, 'I give you these notes, you may keep them, you need not pay me, consider them yours.' Now, you see, there was no passing over, at the time of the talk, of the notes. But the court said there was conduct of the parties that might be considered equivalent to it. What was it? That the one ceased paying these small sums of interest and that the other ceased asking for them. And it being satisfactorily shown that

the donee had the notes in his own hands and possession, and satisfactorily shown that the donor said he might keep them, and the donor never asking for them again, there was a change of conduct between the parties in relation to them, and the court said that might be equal to a delivery or passing over. For instance, Mr. Foreman, I have a book here. I lend it to you during this term. The book is mine. It is in your hands. When I come to leave town you bring the book to me. 'I say Mr. Foreman, I will give you that book, you may keep it, I have read it enough, you seem to be interested in it, you may have it. Now I do not pass that book over to you because it is already in your hands. And if I go home and never pay any attention to the book, time elapses and I do not ask you for it, and you go on and use it exactly as if it was yours and as if you had purchased it somewhere, the law says that may be equivalent to passing it over; that is, there is no necessity of your delivering me the book just for the sake of my handing it back to you again.

That applies to a gift between living persons who are well. There is the possession; there are the words; there is the conduct. That does not apply to a gift on the day that a person is going to die or a gift during the last sickness of a person. Why? Because there is no opportunity for that person who is dying and who does die of that sickness, by any conduct of his to extend and recognize; there is no chance for conduct to be seen to operate. Possibly, in a very extreme case it might exist where there was time enough, but it would be rare, if ever that it could have an application. These are the essential requirements of a gift where a person gives a thing, that is, not a sale, no consideration paid, but a gift. Delivery, you see, is a very essential part of it.

Now the law is even more particular about the evidence of delivery, when a gift is claimed between a wife and husband, or between members of a family, where there is an opportunity sometimes to create evidence falsely, or the appearance of evidence."

Upon that branch of the defense, in which the defendant contended that the moneys deposited consisted of the several earnings

of both Daniel and Mary, and that the money belonged to them jointly and was deposited by them jointly, and the defendant relied on a verbal agreement which, it was contended, was disclosed by the evidence, between Mary and Daniel; that whichever of them survived, the other should be the owner of all the money —of all the books,—the presiding justice ruled to the contrary, and on this subject instructed the jury as follows:

"I deem it my duty to allude to a phrase that was testified to. This is the phrase that I allude to, the talk that, 'the survivor should own all.' The so-called agreement, as testified to, between Daniel and his wife, that whichever outlived the other should own the whole of the savings bank books, would not convey those books. It would not be an executed agreement from the very nature of things; it would be something to be done, not something now done; something to take place in the future; not that you shall now have these books, but if you should survive me you shall have them. It requires something more than that. That would be in the nature of a testamentary contract or document, more like making a will. Had it been in writing; had the parties committed such an agreement as that to writing, properly drawn, they might have bound themselves. But the mere fact (if that is what she meant by this testimony) that I own a piece of a thing and you own a piece of a thing, and we agree that if you live the longest you shall have it all, and if I live the longest I shall have it all, does not now convey the property; it neither divests you of yours, nor me of mine. It cannot have that legal effect.

This evidence, however, introduced by the defendant, may have a bearing in combination with other evidence. It shows a disposition, it shows a state of mind. If you are satisfied that in addition to that, at some time, something more was done, while they were well or while the death-bed scene was before them, that they then consummated it, why that is another thing. You would perhaps more readily believe that there had been an actual delivery later if this was talked or agreed to earlier. The question for you is, does all the evidence, taken together, prove to you that the dying man Hagerty, or the living and well man Hagerty,

divested himself absolutely of that property, so that from that moment it was no longer his, so that he had no longer any more right to control it than you would have or I would have? That is what the defense claims, and that is what the plaintiff's side repudiates and disbelieves, or claims to ; and it is for you to say. Was there, on the rules given and on the evidence, a gift of this property or any part of this property, an absolute gift, executed gift, by Daniel to his wife? If not, that theory of the defense is swept out to sea, gone from the case ; and if you are satisfied it was, that would give her the books. If Daniel gave her the books, you are to give her the books. Or if he gave either book or an undivided half of a book absolutely, an executed gift, you would do the same. And if he did not, you will not." And the defendant excepted to these instructions.

Questions arose between the parties as to the burden of proof, and the presumption of ownership which would arise from the books alone, and from the books accompanied and explained by other evidence. The counsel for the defendant contended that the burden of proof was on the plaintiff, and that the presumption from the books was that the defendant was a joint owner of the funds with her husband. The court on this matter instructed the jury as follows :

"Each side relies upon the books, and these books vary considerably. Here is one. As it was originally (before altered to show that the money had been drawn out and put back, or the equivalent to that) it reads 'The Maine Savings Bank Book, Daniel Hagerty or Mary Hagerty. Pay either in any event.' And the book of the Portland Savings Bank 'in account with Daniel and Mary Hagerty.' That is an account with Daniel and Mary, and if nothing else appeared, if there wasn't a scintilla of evidence except that entry in the book, I think the legal presumption would be that it belonged to them jointly, equally. And I think that in the case of the one entered to 'Daniel Hagerty or Mary Hagerty' there would be some slight presumption, perhaps that Daniel was the depositor. And then the People's Savings Bank 'In account with Daniel Hagerty. Payable also to Mary Hagerty.' The presumption of law would be, nothing else

appearing, clearly, that Daniel was the depositor, because the account is directly in his name, although payable to her. The books made up, in this form of entry, the plaintiff contends aids his theory, and the defendant contends that it aids her theory, that she was the owner with Daniel and that Daniel was not alone the owner, as to two of the books, and more especially as to one of them. But the books may be controlled, (what appears on the books,) by other evidence, and circumstances and facts.   *   *   *

The defense contends that she was half owner, or some proportional owner. Now here is a difficulty in my mind; how can we ascertain the proportion, if it were so, in the indefiniteness of the testimony which has been submitted? If I have money in my hand and you own a part of it and you cannot tell what part you own, how are you going to get it, if you are not able to tell me or some tribunal between you and me, as to what is yours? Now, if Daniel was the actual depositor, if he carried the money to the bank, that act, standing alone, would make him the *prima facie* owner. And if some of her funds were commingled with his and she cannot say how much, she cannot identify them, she cannot follow them in form or amount at all, she would have to fail from having no means of identity of her funds, she cannot identify the proportion. But if you are satisfied he deposited the funds, that she was the actual owner of a portion of those funds, which were taken there to be deposited as hers, just as much as his were being deposited as his, and she did not lend him the money, but it was banked, put into the bank, as her property, should you conclude that half was hers, there is an identity, half would be hers now, and the money being all in her hands, they could not recover but the other half; or if you should be satisfied that a proportion, any proportion, one-third or one-fourth. If the evidence reasonably satisfies you from what has been submitted before you here, if you are able to say in the first place that she is the owner, in this view of the case, of a part of the funds, and you can safely say what part, or you are satisfied what part, why she would have a right to retain that in her own hands, because it would be her own property. If half was hers the plaintiff could not recover but

Daniel's half. If one fourth was hers he could not recover but the three quarters, or if a fifth or a sixth,—in that proportion.

To these instructions upon the burden of proof and presumptions connected with it, the defendant excepted.

*Frank L. Noble*, for defendant.

No instrument of title, creating joint ownership in the deposits, necessary. Schoul. Pers. Prop., vol. 2, § 156. Defendant did not, under the common law, lose her rights by commingling her earnings with her husband's. *Blake* v. *Blake*, 64 Maine, 177 ; *Allen* v. *Lord*, 39 N. H. 196 ; 1 Chitty's Con. (11th Am. Ed.) pp. 256 257 and note.

Burden of proof is on the plaintiff. The intermixture of the moneys, being by agreement, the parties have an equal interest as tenants in common. Kent's Com. (12th ed.) vol. 2, 365 ; *Bryant* v. *Ware*, 30 Maine, 295. All the moneys in the Portland banks belonged to the intestate, or each owned one half part ; otherwise the verdict is insensible. The same presumption as to ownership applies to both of these books. There was an executed contract of gift, *causâ mortis*, from Daniel Hagerty to the defendant. The books were in her possession six years before his death, having been delivered into her hands, by her husband after they returned from Portland. There may be a valid trust against legal representatives although the donor received the income during his life, and the donee knew nothing of the deposit. *Martin* v. *Funk*, 75 N. Y. 134. Here, after the dividends were entered, the books were returned to defendant and no moneys were withdrawn. Delivery of the books sufficient without a written transfer or assignment. *Pierce* v. *Bank*, 129 Mass. 432 ; *Hill* v. *Stevenson*, 63 Maine, 364 ; *Barker* v. *Frye*, 75 Id. 29, 33.

There being a clear intent to give, the books being in defendant's hands, the gift was executed and perfected. There was no need of the defendant's taking the books out of her trunk and place them in her husband's hands that he might give them back again to her. He recognized the fact that they were in her hands where he had already placed them. There is no difference, so far as delivery is concerned, in the two classes of gifts. *Stephenson* v. *King*, 50 Am. Rep. 172 ; Schoul. Pers. Prop., 2d ed., vol. 2, p. 170,

171; *Basket* v. *Hassell*, 107 U. S. Sup. Ct. 602, 611; *Stevens* v. *Stevens*, 2 (Hun.) N. Y. 470; *Wing* v. *Merchant*, 57 Maine, 383.

*Newell and Judkins*, for plaintiff.

Counsel argued that when the money was deposited, the defendant gave it to her husband and did not think him to be her debtor, and did not expect repayment. If so, and they were intermingled with his, and she cannot now identify her part, she cannot hold any of them. *Baker* v. *Vining*, 30 Maine, 121. She recognized his ownership, and did not set up a claim of ownership until her examination in the probate court.

Her testimony that he gave the books into her custody and saying whichever one lived the longest should have the money did not constitute a gift. It would be an attempt to make such a disposition of property as can be made by will only.

Her testimony does not prove a gift *causâ mortis*. It is improbable and contradictory. Had such a gift been made, she would have told her grandson, his guardian and the administrator instead of denying it. She was silent for four years when it was right and natural to speak of it.

Counsel cited: (gifts *causâ mortis*) *Ward* v. *Turner*, 2 Ves. sen. 431; *Tate* v. *Hilbert*, 2 Ves. jr. 111; *Borneman* v. *Sidlinger*, 15 Maine, 429; *Parish* v. *Stone*, 14 Pick. 198; *Raymond* v. *Sellick*, 10 Conn. 480; (delivery) *Drury* v. *Smith*, 1 P. Wms. 404; *Wells* v. *Tucker*, 3 Binn. 366; *Contant* v. *Schuyler*, 1 Paige, 316; *Borneman* v. *Sidlinger, supra;* (parting with dominion) *Hawkins* v. *Blewitt*, 2 Esp. 663; *Bunn* v. *Markham*, 7 Taunt. 224; *Reddel* v. *Dobree*, 10 Simons, 244; *Dole* v. *Lincoln*, 31 Maine, 422, approved in *Barker* v. *Frye*, 75 Id. 33; *Northrop* v. *Hale*, 73 Id. 66, 69; *Hill* v. *Stevenson*, 63 Id. 367; *Carlton* v. *Lovejoy*, 54 Id. 445, 447; *Dresser* v. *Dresser*, 46 Id. 48, 67; (actual delivery) *Cutting* v. *Gilman*, 41 N. H. 147; *Marston* v. *Marston*, 1 Foster, 491; cited with approval in *Carlton* v. *Lovejoy, supra*. "The donor must not only part with the possession but the dominion of the property" per WALTON, J., in *Hatch* v. *Atkinson*, 56 Maine, 324, 330. Here, the chest was in the closet, in the bed room of the intestate, and the books were not delivered at the time of the alleged gift. As between husband and wife, her possession of his property is pre-

sumed to be his possession. Either may be the agent of the other. "A possession which is as consistent with agency as gift must indicate agency instead of gift," per PETERS, C. J., in *Lane* v. *Lane*, 76 Maine, 521, 525. Delivery at the time, essential. Not possession by donee but delivery by donor that is material. Previous possession by donee is insufficient. *Parcher* v. *Saco &c. Bank*, 78 Maine, 470; *Cutting* v. *Gilman, supra*, and cases cited. Actual delivery at the time, the universal rule. Wing v. Merchant and Barker v. Frye are cases of gifts *inter vivos*.

Gifts *inter vivos* (parting with dominion) *Robinson* v. *Ring*, 72 Maine, 140, 144; (intent carried into effect) *Taylor* v. *Fire Department*, 1 Edw. Ch. 294; must be an actual, present, irrevocable transfer and acceptance, not to take effect in future; otherwise only a promise, and *nudum pactum*. *Taylor* v. *Henry*, 48 Md. 550, cited with approval in *Northrop* v. *Hale, supra; Dole* v. *Lincoln, supra.*

Intestate had control of the funds, and could have withdrawn the money, hence no gift or trust. *Northrop* v. *Hale, supra; Urann* v. *Coates*, 109 Mass. 581, 584; Perry's Trusts, 103 and cases cited; *Nutt* v. *Morse*, 142 Mass. 1, 3; *Sherman* v. *Bank*, 138 Id. 581, 582; *Pope* v. *Bank*, 56 Vt. 284. Instructions as to ownership, favorable to defendant. Defendant claiming gift of entire fund, estopped to deny husband's ownership of whole fund. *Dickschied* v. *Exchange Bank*, 28 W. Va. 341.

Burden of proof on donee. Wait's Actions, &c., vol. 3, 509 and cases cited. Voluntarily intermingling property with another's, prevents recovery without proof to distinguish. *Smith* v. *Dillingham*, 30 Maine, 370, 383; *Lupton* v. *White*, 15 Ves. 432; *Martin* v. *Mason*, 78 Maine, 452, 457; *Baker* v. *Vining, supra.* Presiding justice instructed the jury correctly as to presumptive ownership. Greenl. Ev., vol. 1, § 34; *Vining* v. *Baker*, 53 Maine, 544; *Magee* v. *Scott*, 9 Cush. 148, 150, and cases cited.

The deposit, of itself, gives no right to claimant. It is a matter wholly between the depositor and the bank. *Sherman* v. *Bank*, 138 Mass. 581, 583. The depositor, as against the bank, can only be estopped after he has legally divested himself of the fund

and its control. No inference can be drawn, from the form of the deposit, to thus divest himself. S. C.

A deposit, by a husband, in a savings bank, of a sum of money upon the account of both himself and wife, is not evidence of a gift to the wife, he retaining the power to draw the money at will, and in fact drawing the interest upon it on several occasions. *Schick* v. *Grote*, Cent. Rep. 1887, vol. 5, p. 826, (N. J.)

WALTON, J. The most important question is whether the gift of a savings-bank book, from husband to wife, *causâ mortis*, is valid without delivery, provided the book is at the time of the alleged gift already in the possession of the wife. The action was tried before the Chief Justice, and he ruled that to constitute a valid gift, *causâ mortis*, there must be a delivery; that if the property "be at the time already in the possession of the donee, the donor's saying to the donee, 'you may have it,' or 'you may keep it—it shall be yours,' does not pass the property in the case of a gift *causâ mortis.*"

We think this ruling was correct. If the act of delivery was for no other purpose than to invest the donee with possession, no reason is perceived why it might not be dispensed with, when the donee already had possession. But such is not its only purpose. It is essential in order to distinguish a gift, *causâ mortis*, from a legacy. Without an act of delivery, an oral disposition of property, in contemplation of death, could be sustained only as a nuncupative will; and in the manner and with the limitations provided for such wills. Delivery is also important as evidence of deliberation and intention. It is a test of sincerity and distinguishes idle talk from serious purposes. And it makes fraud and perjury more difficult. Mere words are easily misrepresented. Even the change of an emphasis may make them convey a meaning different from what the speaker intended. Not so of an act of delivery. Like the delivery of a turf, or the delivery of a twig, in the ancient mode of conveying estates, or the delivery of a kernel of corn, or the payment of one cent of the purchase money, to make valid a contract for the sale of a cargo of grain, an act of delivery accomplishes that which words alone can not accom-

plish. Gifts, *causâ mortis*, ought not to be encouraged. They are often sustained by fraud and perjury. It was an attempt to sustain such a gift by fraud and perjury that led to the enactment of the statute for the prevention of fraud and perjury. See *Matthews* v. *Warner*, 4 Vesey, Jr., 187, 196, note; *Leathers* v. *Greenacre*, 53 Maine, 561, 569. As said in *Hatch* v. *Atkinson*, 56 Maine, 326, it is far better that occasionally a gift of this kind should fail than that the rules of law be so relaxed as to encourage fraud and perjury.

We are aware that some text writers have assumed that when the property is already in the possession of the donee, a delivery is not necessary. But the cases cited in support of the doctrine nearly all relate to gifts, *inter vivos*, and not to gifts *causâ mortis*. A gift, *inter vivos*, may be sustained without a distinct act of delivery at the time of the gift, if the property is then in the possession of the donee, and the gift is supported by long acquiescence of the donor, or other entirely satisfactory evidence. This court so held in *Wing* v. *Merchant*, 57 Maine, 383, and the jury were so instructed in this case, and the defendant had the benefit of the instruction. But the question we are now considering is not whether a gift, *inter vivos*, can be sustained without a distinct act of delivery, but whether such a relaxation of the law can be allowed in the case of a gift *causâ mortis*. We think not. Reason and the weight of authority are opposed to such a relaxation. *Hatch* v. *Atkinson*, 56 Maine, 324, 327; *Lane* v. *Lane*, 76 Maine, 521; *Parcher* v. *Savings Inst.*, 78 Maine, 470; *Dunbar* v. *Dunbar*, 80 Maine, 152; *Miller* v. *Jeffries*, 4 Gratt. 472; *French* v. *Raymond*, 39 Vt. 623; *Cutting* v. *Gilman*, 41 N. H. 147; *Delmotte* v. *Taylor*, 1 Red. (N. Y.) 417; *Egerton* v. *Egerton*, 17 N. J. Eq. 419; *Kenney* v. *Pub. Adm.*, 2 Bradf. (N. Y.) 319; 2 Kent's Com. (10th ed.) 602, and note; *Dickeschied* v. *Exchange Bank*, 28 W. Va. 340; *Walsh's Appeal*, (Pa.) 1 L. R. A. 535, and note.

It is the opinion of the court that the gift of a savings-bank book, *causâ mortis*, to be valid, must be accompanied by an actual delivery of the book from the donor to the donee, or to some one for the donee; and that the delivery must be made for the express purpose of consummating the gift; and that a previous and con-

tinuing possession by the donee is not sufficient; and that in this, and in all particulars, the rulings in the court below were correct; and that no cause exists for granting a new trial.

*Motion and exceptions overruled.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.