Hillsborough, {
Nov. 5, 1902. }

BEAN *&* a., Ap'ts, *v.* BEAN *&* a.

In prosecuting his personal claim against an estate, an executor occupies the position of an adverse claimant, and cannot testify in respect to facts which occurred in the lifetime of the testator.

Where a claimant against an estate asserts title to personalty as a gift from the decedent, he cannot be permitted to testify that an envelope not produced was in his possession the moment after the donor's decease, that it bore an inscription in the decedent's handwriting declaring it to be the property of the claimant, and that it contained certificates of stock and bank-books, the ownership of which is the matter in dispute.

Where property is claimed as a gift *inter vivos*, it is incumbent upon the donee to establish all facts essential to the validity of such gift; and the evidence adduced should disclose actual delivery and the circumstances under which it occurred, so that it may appear that the gift was complete and unconditional, and not made during the donor's last sickness and in view of his death.

Under the common law of this state, as well as under the statute, actual delivery to the donee, or to some person for him, is essential to the validity of a gift *causa mortis;* and an after-acquired possession, or a previous and continuing possession by the donee, although by authority of the donor, is not sufficient.

A written declaration of gift by a donor, and a possession of the property by the donee subsequent to the donor's death, are not sufficient to prove the actual delivery essential to the validity of a gift, either *inter vivos* or *causa mortis.*

PROBATE APPEAL. Trial by jury and verdict for the appellants. Transferred from the September term, 1901, of the superior court by *Peaslee,* J. The issue tried was whether John D. Bean in his lifetime gave to the appellants, his wife and daughter, certificates for $2,400 of the guaranty fund of the Guaranty Savings Bank of Manchester, twenty-four shares of the stock of the New Hampshire Fire Insurance Company, sixteen shares of the stock of the New Hampshire Trust Company, nineteen shares of the stock of the People's Fire Insurance Company, ten shares of the stock of the Bank of New England, five shares of the stock of the Amoskeag National Bank, two deposit-books of the Guaranty Savings Bank, and one deposit-book of the Bank of New England, all of which stood in his name and unassigned at the time of his decease.

Mr. Bean's family, for a period previous to his death, consisted of himself, his wife, his daughter, and her husband. He died

August 17, 1890, leaving a large property in addition to that here in controversy. The wife was offered as a witness at the trial, and testified, subject to exception, that the above-named securities were in a private drawer in a bureau in her chamber, the moment after Mr. Bean died. Both the wife and daughter testified fully as to what the securities were, and that they were enclosed in an unsealed envelope upon which was written, "The property of Electa C. Bean and Emma R. Mead." The wife was the only witness to her possession of the property the moment after Mr. Bean's death, but other witnesses testified that she had the possession of it a week or two subsequent to his decease, and gave a description of it. One witness testified to the written declaration upon the envelope, and that it was in Mr. Bean's handwriting. The envelope was not produced in evidence, having been destroyed.

Mr. Bean was a business man of large experience. During the summer preceding his death he had been physically and mentally well. He kept his valuable papers in a safe at his house. The wife and daughter did not know how to open the safe, but the son-in-law did. August 11, 1890, Mr. Bean caused to be transferred to his wife thirty shares of the stock of the Concord & Montreal Railroad, and August 13, 1890, ten shares of the Pemigewasset Valley Railroad to his daughter, all standing in his name. These transfers were made upon the backs of the certificates, filled out and signed by Mr. Bean, and witnessed.

The appellees moved for a nonsuit at the close of the appellants' evidence, and that a verdict be directed for them at the close of all the evidence. Both motions were denied, subject to exception.

*Joseph W. Fellows* and *Burnham, Brown & Warren*, for the appellants.

*Mitchell & Foster* and *Taggart, Tuttle & Burroughs*, for the appellees.

BINGHAM, J. The appellants claim certain certificates of stock and savings-bank books as a gift from the testator. At the trial they offered themselves as witnesses to prove the gift, but were not allowed to testify in respect to facts occurring in the lifetime of the testator, unless they were by being permitted to testify that the unsealed envelope enclosing the securities was in the possession of the wife the moment after his decease; that it had upon it an inscription which read, "The property of Electa C. Bean and Emma R. Mead"; and that the securities were certificates of stock and savings-bank books, which they described in detail. The inscription was in the handwriting of the testator.

It is contended by the appellees that the appellants were incompetent witnesses; that their testimony was offered to prove certain facts that occurred, if at all, in the lifetime of the testator, and tended directly, as well as inferentially, to prove such facts. They rely, in their objection to the testimony, upon section 16, chapter 224, of the Public Statutes, which reads as follows : " When one party to a cause is an executor, administrator, or the guardian of an insane person, neither party shall testify in respect to facts which occurred in the lifetime of the deceased or prior to the ward's insanity, unless the executor, administrator, or guardian elects so to testify, except as provided in the following section."

Although the appellants are the executrices of the testator's will, yet in this proceeding they are not acting in an official capacity, but as individuals and against the interest of the estate. They stand, therefore, like any other party claiming adversely to the estate. The contest is between them and the estate represented by the appellees as legatees under the will. *Tuck* v. *Nelson*, 62 N. H. 469, 471 ; *Whitaker* v. *Marsh*, 62 N. H. 477 ; *Perkins* v. *Perkins*, 58 N. H. 405. The facts relating to the gift of the property occurred, if at all, in the lifetime of the testator, and were within his knowledge ; and the appellants, by reason of the statute, cannot testify in regard to them.

Was it in contravention of the provisions of the statute to permit them to testify to the matters objected to ? " It is said . . . that the design of the provision of the statute which excludes the survivor from testifying against the estate of a deceased party is to place the parties upon equal footing, and not allow the living party to a trade or transaction to be a witness in relation to it, when the other party to the transaction, being dead, cannot testify." *Tuck* v. *Nelson*, 62 N. H. 469 ; *Moore* v. *Taylor*, 44 N. H. 370, 375 ; *Chandler* v. *Davis*, 47 N. H. 462, 463, 464 ; *Clark* v. *Clough*, 65 N. H. 43, 76. " These decisions demonstrate that a literal construction is not to be put upon the statute, but . . . that it is to be interpreted with reference to its general scope and object, which was to secure equality in the respect named between the living and the dead." *Clark* v. *Clough, supra.*

In applying the statute to this case, it appears from the testimony of the appellants that the inscription upon the envelope, shown to be in the handwriting of the testator, declared the contents of the package to be " The property of Electa C. Bean and Emma R. Mead." This was direct evidence of a fact occurring in the lifetime of the testator. It was the living party testifying to the declaration of the decedent himself. It matters not that the declaration had been reduced to writing, for the writing was not produced in evidence. Had the declaration been spoken instead of

written, the appellants would not be competent witnesses to testify to it. Having been reduced to writing and then destroyed, they are equally incompetent witnesses to it. They not only testified to the words used by the testator to declare the gift, but in explanation of what he intended should be included in the gift, by the use of the word "property," they gave evidence of the contents of the package. This was a part of his declaration expressing his intention. It would not have been different had he written upon the envelope a list of the securities, and the appellants had testified to his declaration in that form. The wife, in addition to giving the testator's declaration, was permitted to testify that she had possession of the securities the moment after he died. While her testimony about the possession, standing alone, may not have been within the statute, yet, when taken in connection with her testimony about the declaration, it was surely within its reason and purpose, for it abridged that rule of equality sought to be established by the statute between the living and the dead. The conclusion is that the appellants were incompetent witnesses to the gift, and that these exceptions should be sustained.

It does not appear that injustice will be done, within the meaning of the statute, by excluding their testimony. P. S., c. 224, s. 17 ; *Chandler* v. *Davis*, 47 N. H. 462 ; *Harvey* v. *Hilliard*, 47 N. H. 551 ; *Burns* v. *Madigan*, 60 N. H. 197.

As there were other witnesses to most of the facts testified to by the appellants, the question remains, whether there was any evidence from which the jury might properly find a gift of the securities. It is claimed by the appellants that they received the securities as a gift *inter vivos*, and that the evidence was sufficient to warrant the finding by the jury. The burden is upon them to establish all the facts essential to such a gift. As between husband and wife, " the presumption of law is that the property of the one remains his or her property, although taken into the possession of the other, until the contrary be clearly proved." *Lane* v. *Lane*, 76 Me. 521 ; *Hanson* v. *Millett*, 55 Me. 184 ; *Hileman* v. *Hileman*, 35 Ind. 1 ; *McNally* v. *Weld*, 30 Minn. 209 ; 14 Am. & Eng. Enc. Law 1051.

In the case of a gift *inter vivos*, the evidence should be sufficient to render a finding of the fact of delivery reasonable, and should disclose the circumstances under which the delivery occurred ; that it may appear that the gift was absolute, not conditional ; that it was complete, not made in the donor's last sickness, or on his death-bed and in view of death. *Drew* v. *Hagerty*, 81 Me. 231, 233, 234, 235. The policy of the law requires that the facts distinguishing such gifts from gifts *causa mortis* should be clearly established, that a gift of the latter class may not on slight proof be

found to be of the former, and thus the statutory proof in gifts *causa mortis* avoided.

What did the evidence disclose, after eliminating the above testimony of the appellants? It showed that the securities were in the wife's possession, in an unsealed envelope, after the testator's decease; that upon the envelope was written, in his handwriting, the declaration above given; that the daughter did not see the package, or, so far as it appears, know of its existence until after he was dead; that the stock and bank books stood in his name unassigned; that he was a man well acquainted with business transactions; and that on two occasions, but four and six days before his death, he caused to be transferred to the appellants certificates of stock in other corporations. This does not prove that the alleged gift was absolute and not conditional. It does not show the circumstances under which a delivery occurred, or that actual delivery ever took place. The attending circumstances are left wholly to conjecture. The wife's possession after the testator's death, accompanied with the declaration, is as consistent with a gift upon his death-bed and in view of death, as that it was absolute. If there was a delivery, and it took place upon the testator's death-bed and in view of death, it would be inferred that the gift was conditional. His omission to declare the condition would not render it absolute. "The condition need not be expressed, as it is always implied when the gift is made in the extremity of sickness, or in contemplation of death." *Emery* ·v. *Clough*, 63 N. H. 552, 553, 554; *Grymes* v. *Hone*, 49 N. Y. 17; *Williams* v. *Guile*, 117 N. Y. 343, 349.

As a gift *causa mortis* it must fail, for actual delivery has not been established upon the petition of the donees to the judge of probate, by the testimony of two indifferent witnesses, as required by P. S., *c.* 186, *s.* 18, first enacted in 1867. Under the common law of this state, as well as under the statute, actual delivery to the donee or some one for him is necessary to sustain a gift *causa mortis.*

In *Cutting* v. *Gilman* (June, 1860), 41 N. H. 147, 150 (*Sargent,* J.), the court held: "It is now well settled that, under certain limitations, a gift may be made by one in present contemplation of death, of money or other property capable of passing by delivery; that to give effect to such a donation there must be a clear and manifest intention of the owner to give, a subject capable of passing by delivery, and an actual delivery at the time, in contemplation of death. . . . In such cases there must be an actual delivery. . . . It must be an actual delivery of the thing itself, or of the means of getting possession and enjoyment of the thing, and there must be something amounting to a delivery at the time

of the gift; for it is not the possession of the donee, but the delivery to him by the donor, that is material. An after-acquired possession, or a previous and continuing possession of the donee, though by authority of the donor, is insufficient." This decision has been approved in *Kenistons* v. *Sceva*, 54 N. H. 24, 36, 38, and *Emery* v. *Clough*, 63 N. H. 552, 554.

In *Drew* v. *Hagerty, supra*, the question before the Maine court was whether the rule requiring actual delivery in gifts *causa mortis* should be relaxed, and it held: "We think not. Reason and the weight of authority are opposed to such a relaxation"; citing *Cutting* v. *Gilman, supra*, and other cases.

In *Reed* v. *Spaulding* (Dec., 1860), 42 N. H. 114, 119 (*Sargent,. J.*), it was held: "Gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect. In this respect they differ from gifts *causa mortis*. But in both cases alike, delivery is essential, both at law and in equity, to the validity of a parol gift of a chattel. Without actual delivery the title does not pass."

The requirement of actual delivery in gifts *inter vivos* had been previously announced in *Marston* v. *Marston*, 21 N. H. 491, 513, and *Sanborn* v. *Goodhue*, 28 N. H. 48, 56, and has been recently approved in *Marcy* v. *Amazeen*, 61 N. H. 131, 133. The early decisions in this state on this question were based upon the English decision of *Irons* v. *Smallpiece* (1819), 2 B. & Al. 551, which has been recently affirmed in that jurisdiction in the case of *Cochrane* v. *Moore* (1890), 25 Q. B. Div. 57.

Inasmuch as it has been the well-recognized rule of law in this jurisdiction for over forty years, that in both classes of gifts there must be a manifest intention of the donor to give, and an actual delivery of the subject-matter at the time of the declaration or accompanying it so nearly as to be one transaction, and that "an after-acquired possession, or a previous and continuing possession of the donee, though by authority of the donor, is insufficient," we now see no reason for a relaxation of the rule. Tested by this rule, the verdict in this case cannot be sustained, for the declaration of gift and the possession by the wife subsequent to the testator's death are not sufficient to prove actual delivery.

Our attention has been called to the case of *Wing* v. *Merchant*, 57 Me. 383, as sanctioning a relaxation of the rule requiring proof of actual delivery in gifts *inter vivos;* but that decision, as explained by Chief Justice *Peters* in his charge in *Drew* v. *Hagerty, supra*, discloses that the verdict in this case could not be sustained, even under the rule there laid down, as the elements of time and recognition of ownership, there regarded as the equivalent of delivery, are wanting. In that case the chief justice in

his charge to the jury, which was sustained in its entirety by the court above, said: "Mr. Foreman, I have a book here. I lend it to you during this term. The book is mine. It is in your hands. When I come to leave town you bring the book to me. I say, Mr. Foreman, I will give you that book; you may keep it; I have read it enough; you seem to be interested in it; you may have it. Now I do not pass that book over to you, because it is already in your hands; and if I go home and never pay any attention to the book, time elapses and I do not ask you for it, and you go on and use it exactly as if it was yours and as if you had purchased it somewhere, the law says that may be equivalent to passing it over; that is, there is no necessity of your delivering me the book, just for the sake of my handing it back to you again. That applies to a gift between living persons who are well. There is the possession; there are the words; there is the conduct. That does not apply to a gift on the day that a person is going to die, or a gift during the last sickness of a person. Why? Because there is no opportunity for that person who is dying, and who does die of that sickness, by any conduct of his to extend and recognize; there is no chance for conduct to be seen to operate. Possibly, in a very extreme case it might exist where there is time enough; but it would be rare, if ever, that it could have an application."

*Verdict set aside: judgment for the appellees.*

All concurred.