159 So.2d 191

**Rhoda Elizabeth BENSON, Executrix,**

v.

**JEFFERSON MORTGAGE CO., Inc., et al.**

**I Div. 93.**

Supreme Court of Alabama.

Dec. 12, 1963.

Holberg, Tully & Hodnette, Mobile, for appellant.

Harry Seale, Mobile, for appellee Goodloe.

74

LIVINGSTON, Chief Justice.

This action was instituted in the court below by the Jefferson Mortgage Company, Inc., by interpleading certain funds owed by it and evidenced by a promissory note payable to "Zeno W. Benson or Cora Goodloe." The accrued principal and interest to date were paid into court and the appellant, Rhoda Elizabeth Benson, wife of the deceased, Zeno W. Benson, and the appellee, Cora Goodloe, sister of the deceased, were named as respondents. Both respondents below filed answers and cross bills to the complaint; each of them answered the other's cross bill and claimed the funds.

On June 13, 1960, a decree pro confesso was entered against appellees, Cora Goodloe and Jefferson Mortgage Company, Inc. On November 14, 1961, the decree pro confesso was set aside; no reason for so doing was set out in the order. On the 20th day of January, 1962, after hearing testimony in the cause, the trial court entered a final decree in which it determined that the complainant, Jefferson Mortgage Co., Inc., was a mere stakeholder, and that appellee, Cora Goodloe, was entitled to the funds in question. From this decree, and from the order denying a rehearing, this appeal was perfected.

The testimony tends to show the following facts: Zeno William Benson was the brother of Cora Goodloe and lived with her for several years in the 1940's. He paid her no regular rent or board, but gave her small sums periodically for expenses. Apparently, Mr. Benson was a man of some financial substance and lent money on occasions. Sometime after 1947, one Joe Mitchell asked Mr. Benson for a loan. Appellee, Cora Goodloe, insisted that he not let Mitchell have all of his money, saying, "You might get sick or have an emergency, or need some money." Sometime thereafter, Mr. Benson "gave" Mrs. Goodloe an envelope containing $5,000 in cash. She put this money into their joint safety deposit box in the First National Bank of Mobile, where it remained for several years. At that time, both Mrs. Goodloe and Mr. Benson had keys to the box and either could open it. About 1954, the box rent was increased, and Mrs. Goodloe gave up the box at the bank and removed the money and placed it in her dresser drawer, where it remained for several years. In the meantime, about 1949, Mr. Benson married the appellant, Rhoda Elizabeth Benson, and moved out of his sister's home. It does not affirmatively appear whether or not Mr. Benson knew that Mrs. Goodloe had the money at her home, but about 1956 or 1957, he telephoned her and asked if she had the money. Upon being informed that she did, he requested her to bring it to him at the Elks Club and stated that he could "put it at interest, or that he could get interest on it, and he could use the interest * * *." At this time, Mrs. Goodloe "begged him to put it in bonds," but he refused to do so. Instead, he invested the money, in his own name, with one Joseph B. Mitchell, a "principal" of the Jefferson Mortgage Co., Inc., but in this instance acting on his own. Mr. Benson alone received the interest from this investment, but left the principal intact. Mr. Mitchell died, and the Jefferson Mortgage Company agreed to convert the investment to a trust account. This was done on May 21, 1959. By the terms of this agreement, Jefferson Mortgage Company kept the $5,000, and in turn assigned a mortgage and note of one Williams and wife, which it held as collateral security, and also executed its note for $5,000 with interest at 5 per cent. Both the note and the assignment of the mortgage were made to "Zeno W. Benson or Cora Goodloe." Benson placed the assignment of the mortgage in a sealed envelope and asked Mr. Lynch to put it in the Elks Club safe. He told Mr. Lynch that if

anything happened to him to turn it over to his sister, Mrs. Goodloe.

Benson executed his will on the 28th day of April, 1959.

The Williams' note and mortgage was assigned to "Zeno W. Benson or Mrs. Goodloe" on May 21, 1959, after Benson executed his will, though the exact date on which Benson delivered the papers to Lynch is not shown. The evidence does tend to show that Benson was in the hospital after he delivered the envelope containing the Williams' note and mortgage to Lynch. Benson died August 12, 1959.

The record leaves much to be desired as to exactness, but, of course, we must take it as it is.

There is very little evidence as to the state of Mr. Benson's health. It does appear that he had a heart attack several years before his death and had been sick for "quite some little time" before he got the money from Mrs. Goodloe in 1956 or 1957. At some time thereafter, the time is not definitely fixed, he was in the hospital and told Mrs. Goodloe that he had "fixed it alright" and that she would get the $5,000. That was during his last illness, although he got out of the hospital afterwards. Just how long he was out of the hospital before he died is not clear.

A few days after her brother's death, Mrs. Goodloe procured the mortgage assignment from Mr. Lynch and presented it to Jefferson Mortgage Company, which refused to pay the money to her and instead instituted this suit.

Appellant, Mrs. Rhoda Elizabeth Benson, claims under the will of Zeno W. Benson, under which she was the sole devisee, legatee and executrix.

The court below in its final decree found "that Zeno W. Benson during his lifetime while in imminent peril of death delivered to or deposited with John M. Lynch as Trustee for Cora Goodloe the note and mortgage hereinabove referred to, that such delivery amounted to a completion of a gift causa mortis * * * and that after such delivery Cora Goodloe became the owner of the note and mortgage and was and is entitled to the proceeds thereof."

The Alabama cases are consistent in detailing the necessary elements of a gift causa mortis and a careful study of them reveals that the very strictest proof has always been required to sustain such a gift. Perhaps the reason for this may best be explained with the following quotation from Justice Gardner's dissenting opinion in Smith v. Eshelman, 235 Ala. 588, 592, 180 So. 313, 317:

"In Drew v. Hagerty, 81 Me. 231, 17 A. 63, 64, 3 L.R.A. 230, 10 Am.St.Rep. 255, cited with approval in Barnes v. Barnes, 174 Ala. 166, 56 So. 958, 959, is this observation: 'Gifts causa mortis ought not to be encouraged. They are often sustained by fraud and perjury. It was an attempt to sustain such a gift by fraud and perjury that led to the enactment of the statute for the prevention of fraud and perjury. * * * It is far better that occasionally a gift of this kind should fail than that the rules of law be so relaxed as to encourage fraud and perjury.'"

In the same opinion, Justice Gardner (with whom Justice Knight concurred) quoted from the case of Basket v. Hassell, 107 U.S. 602, 609, 2 S.Ct. 415, 27 L.Ed. 500, as follows:

"'A donato mortis causa must be completely executed, precisely as required in the case of gifts inter vivos, subject to be divested by the happening of any of the conditions subsequent; that is, upon actual revocation of the donor or by the donor's surviving the apprehended peril of outliving the donee, or by the occurrence of a deficiency of assets necessary to pay the debts of the deceased donor. These conditions are the only qualifications that distinguish gifts mortis causa and inter vivos. * * *'"

The majority of the Court in the Smith case, supra, recognized this principle, stating:

"* * * if the title does not pass and was not intended to pass out of the donor until his death, the manual delivery of the property to another is not such delivery as is necessary."

The Court stated, in effect, that the possession and title must pass to the donee subject only to a defeasance in certain instances. We therefore turn, in the instant case, to the question of whether or not possession or title to the property passed during the donor's lifetime. There is ample evidence from which the trial court could have found that it did. As we stated in the Smith case, supra, the court will indulge a presumption that the person to whom delivery is made takes as a trustee for the donee. In the instant case, Lynch held the assignment as a trustee for Mrs. Goodloe rather than as an agent of Mr. Benson. Most of the cases relied upon by the appellant simply establish the rule that there can be no gift of personal property where a donor reserves dominion and control over the property. Vinson v. Vinson, 262 Ala. 388, 79 So. 2d 31; Livingston v. Powell, 257 Ala. 38, 57 So.2d 521. In view of the rule as to the presumption of trusteeship, however, there is ample evidence to support a finding by the trial court that all such dominion and control had been relinquished by Mr. Benson.

Appellant contends also that there could be no gift causa mortis in this case because of the lapse of time between the delivery of the instrument and Mr. Benson's death.

We do not agree. The cases set no exact time limit in this regard. Indeed, this case typifies the necessity for a certain amount of latitude on this question. It is common knowledge that heart diseases can be, and frequently are, fatal. Unlike certain other ailments, however, the length of time an afflicted individual may live can vary greatly. There was very little helpful testimony below concerning the exact nature and seriousness of the deceased's illness at the time he made the gift in question. There is, however, sufficient legal evidence from which the trial court could have correctly concluded that the gift in question was causa mortis. It is one of the most elementary principles of law that when the trial court hears the evidence ore tenus the rulings of that court will not be disturbed on appeal unless plainly or palpably wrong. Bell v. Prichard, 273 Ala. 289, 139 So.2d 596; Family Land & Investment Co. v. Williams, 273 Ala. 273, 138 So.2d 696.

It is the appellant's theory that if the deceased's widow is not entitled to all the money she is at least entitled to half of it because Mr. Benson and Mrs. Goodloe were tenants in common.

This argument is not well founded because there was clearly no tenancy in common. If Mr. Benson gave the instrument to Mr. Lynch to hold as trustee for Mrs. Goodloe (and we have held that he did), clearly he gave her the entire instrument and all that it represents.

Appellant also contends that the trial court erred in setting aside the decree pro confesso 17 months after it was entered. Equity Rule 34, Title 7, Code of Alabama 1940, provides that such decrees may be set aside. We have said that the power to set aside a decree pro confesso is one which rests in the sound discretion of the court, and the exercise of that power will not be revised on appeal except for an abuse of that court's discretion. Ex parte Jones, 246 Ala. 433, 20 So.2d 859, and cases therein cited. And in the Jones case, supra, we reiterated the familiar rule that since the trial court is, from personal observation, familiar with all the attendant circumstances of the particular case and has the best opportunity of forming a correct opinion upon that case, the presumption will be in favor of its action, and in no case will the exercise of this discretion be reversed where it manifestly appears that justice has been done without sacrificing the rights of the defendant. We cannot hold that the trial court

erred in setting aside the decree pro confesso.

The decree of the trial court should be, and is hereby, affirmed.

Affirmed.

SIMPSON, MERRILL and HARWOOD, JJ., concur.