McCORD'S ADMINISTRATOR v. McCORD *et al.*, *Appellants.*

1. **Donatio Causa Mortis.** To support a *donatio causa mortis* there must be a delivery of the subject by the donor as a gift, and the delivery must be such as, in case of a gift *inter vivos*, would invest the donee with the title.

2. ———: CASE ADJUDGED. Where a father in his last illness placed a package of money in the possession of his son to take care of, and some days afterward directed the son, in case he should not get well, to take the money and, after paying funeral expenses, etc., to divide the remainder equally between himself and certain of his brothers and sisters; *Held,* that the only delivery ever made by the father being by way of bailment and not in execution or contemplation of a gift, there was no *donatio causa mortis.*

   The father at the same time gave instructions as to the settlement of his landed estate in which he directed a portion of the money to be used. He also made provision for payment of debts. *Held,* that these dispositions were void under the statute of wills; and as they and the gift of the money constituted but one transaction, the latter was for this reason also void.

3. **Practice**: JUDGMENT. In finally disposing of a case the court should render judgment either for or against every party to the record.

*Appeal from Johnson Circuit Court.*—HON. NOAH M. GIVAN, Judge.

REVERSED.

*Alex. Graves* and *A. F. Alexander* for appellants.

When any person in last sickness with a view to death, delivers any personal property to another, who accepts the same, with instructions that at or after his death it shall

be delivered to a third person, or be divided between third persons, in a specific proportion, it is a good gift *mortis causa;* and if the donor dies of that sickness without having revoked the gift, the donee is a trustee of the property for the uses indicated by the donor. *Clough v. Clough,* 117 Mass. 83, 85 ; *Pierce v. Boston B'k,* 129 Mass. 425 ; *s. c.,* 37 Am. Rep. 371; *Sheedy v. Roach,* 124 Mass. 472; *s. c.,* 26 Am. Rep. 680 ; *Ellis v. Secor,* 31 Mich. 185; *s. c.,* 18 Am. Rep. 178 ; *Turner v. Estabrook,* 129 Mass. 425 ; *Hill v. Stevenson,* 63 Me. 364 ; *s. c.,* 18 Am. Rep. 231 ; *Davis v. Ney,* 125 Mass. 590; *s. c.,* 28 Am. Rep. 272; *Grymes v. Hone,* 49 N. Y. 17 ; *Sessions v. Mosely,* 4 Cush. 87 ; *Coutant v. Schuyler,* 1 Paige 316; *Trorlicht v. Weizenecker,* 1 Mo. App. 482; *Caldwell v. Renfrew,* 33 Vt. 213 ; *Carradine v. Carradine,* 58 Miss. 286; *s. c.,* 38 Am. Rep. 324. No particular ceremony or technical words are necessary to express the intention of the donor with regard to the property; but it is only necessary that such an intention was expressed or clearly indicated, and that the amount each beneficiary is to have may be ascertained; and if such an intention was indicated, it is the duty of the courts to carry out that intention. *Clough v. Clough,* 117 Mass. 83, 85; *Sheedy v. Roach,* 124 Mass. 472 ; *s. c.,* 26 Am. Rep. 680 ; *Ellis v. Secor,* 31 Mich. 185 ; *s. c.,* 18 Am. Rep. 178; *Dresser v. Dresser,* 46 Me. 48; 2 Story Eq. (12 Ed.) 607 a. If the donee be in the possession of the property at the time the intentions of the donor are expressed to him, it is a sufficient delivery to him, and the law requires no new delivery. *Hunt v. Hunt,* 119 Mass. 474, 476 ; *Champney v. Blanchard,* 39 N. Y. 111 ; *Wing v. Merchant,* 57 Me. 383; *Stevens v. Stevens,* 2 Hun 470. If the property be in the hands of any bailee of the donor who is notified of the donation at the time it is made, this constitutes a sufficient delivery to the donee. 3 Redfield on Wills, (3 Ed.) 329, note 28; *Waring v. Edmonds,* 11 Md. 424 ; *How v. Taylor,* 52 Mo. 592. The validity of the gift is not affected by the fact that it constitutes the greater part, or even the whole, of the personal estate of the de-

cedent, nor by the fact that at the same time the decedent gives instructions for the conveyance of real estate for other purposes; *Meach v. Meach*, 24 Vt. 591; 3 Redfield on Wills (3 Ed.) marg. p. 344, § 15; marg. p. 339, § 11; *Ellis v. Secor*, 31 Mich. 185; *Cooper v. Burr*, 45 Barb. 9; nor by the instructions of the decedent to pay a certain sum of the money to defray the expenses of his funeral. *Hills v. Hills*, 8 M. & W. 400; 1 Williams on Exrs., (4 Ed.) 652. *Walter v. Ford*, 74 Mo. 197, cannot be construed to mean that the delivery, to sustain a gift *causa mortis*, must be the same as required in gifts *inter vivos*. Because that case is based on the doctrine laid down by Story; and he says on this point: "The doctrine no longer prevails that where a delivery will not execute a complete gift *inter vivos*, it cannot create a *donatio mortis causa*." 1 Story Eq. Jur., (12 Ed.) p. 591, § 607 c; also note 3.

*John F. Philips* for respondent.

An indispensable requisite of every gift is a delivery of the subject matter by the donor to the donee. This delivery must be made at the time of the gift. Delivery takes the place of nuncupation. *French v. Raymond*, 39 Vt. 623; *Cutting v. Gilman*, 41 N. H. 147, 151, 152, 153; *Egerton v. Egerton*, 17 N. J. Eq. 421; *Clough v. Clough*, 117 Mass. 84; *Powell v. Hillicar*, 26 Beav. 261; *Bunn v. Markham*, 7 Taunt. 224 (2 E. C. L. 81). There can be no pretense in this case that on Saturday, the day and time of the alleged gift, there was any delivery, any tradition of this property. The money then was down-stairs between the beds and in the possession of Mrs. McCord, and there it remained until after the alleged donor's death.

Appellant invokes the maxim: *Lex non cogit ad vana seu inutilia;* and claims that the money was already in Charles' possession at the time of the gift, and, therefore, no tradition was necessary. Even had the money been within his reach at the time of the gift, well considered

authorities say that is not sufficient. *Cutting v. Gilman*, 41
N. H. 152; *McGrath v. Reynolds*, 116 Mass. 569; *Duncan
v. Duncan*, 5 Littel (Ky.) 12; *Delmotte v. Taylor*, 1 Redf.
(N. Y.) 417; *French v. Raymond*, 39 Vt. 623; *Shower v.
Pilch*, 4 Exch. 478; *Walsh v. Studdart*, 4 Dru. &. War. 159.
The authorities holding or intimating to the contrary lose
sight of the principle that delivery takes the place of nun-
cupation, and is the evidence of the consummation of the
gift. *Miller v. Jeffries*, 4 Gratt (Va.) 480. . Charles McCord,
however, did not have possession of the money at the time
of the gift, in fact or law. On the Tuesday before, when
the money was handed him by the intestate to take care
of for him, Charles handed it at the time to his wife to take
care of. This was done in the presence of the intestate
He saw it and acquiesced in her custodianship, and thereby
consented to her being and acting as the depository for
him. She thereby became his agent, and not that of her
husband. Charles never re-acquired possession of the
property during his father's lifetime; nor does the evidence
show that he even knew where it was kept. After the
owner's death Mrs. McCord got it and handed it to Charles.
Her possession was not sufficient to dispense with a re-
delivery to Charles. *Case v. Dennison*, 9 R. I. 88; s. c., 11
Am. Rep. 222.

The transaction was an attempt to make a parol testa-
mentary disposition of the whole estate, personal and real,
of the intestate. As such it cannot be sustained as a gift
*causa mortis.* *Headley v. Kirby*, 18 Pa. St. 326; R. S., §§
3984, 3986, 3987; *French v. Raymond*, 39 Vt. 625; *Haydock
v. Haydock*, 34 N. J. Eq. 570; s. c., 38 Am. Rep. 385; s. c.,
13 Reporter 434; *Harris v. Clark*, 3 Comst. 121.

The alleged gift must fail because it was not a gift in
*praesenti.* There must be a gift and delivery of the prop-
erty to take effect immediately, subject to be recalled or
defeated at donor's recovery. *Hassell v. Basket*, (U. S. C.
C. Indiana,) 7 Cent. L. J. 308. The property must pass
at the time, and not be intended to pass at the giver's

death.   *Gass v. Simpson*, 4 Cold. (Tenn.) 293;   *Dole v. Lincoln*, 31 Me. 422, 428;   *Chevallier v. Wilson*, 1 Tex. 171;   *Zimmerman v. Streeper*, 75 Pa. St. 147;   *Shower v. Pilch*, 4 Exch. 478.

*Wallace & Chiles* also for respondent.

There was no such delivery as the law requires to constitute a gift *mortis causa*.   1 Williams on Executors, (3 Am. Ed.) s. p. 650, 655, and note J;   *Winchell v. Mitchell*, 1 Murphy 127.   Mere delivery to an agent, in the character of agent for the giver, is not sufficient to constitute a gift *mortis causa*.   *Chevallier v. Wilson*, 1 Tex. 161;   3 Redfield on Wills, 330, 331;   2 Gill & John., 215, 217;   *Duncan v. Duncan*, 5 Litt. 12;   *Cutting v. Gilman*, 41 N. H. 147;   *Hassell v. Basket*, 7 Cent. L. J. 308.   Both possession and title must pass to the donee to constitute a gift.   This applies as well to gifts *causa mortis* as to gifts *inter vivos*.   The title must pass *inter vivos*, or it never can pass, but will go to the donor's legal representative.   *Gass v. Simpson*, 4 Cold. 293; *Dole v. Lincoln*, 31 Me. 422, 428;   *Zimmerman v. Streeper*, 75 Pa. St. 147;   *Shower v. Pilch*, 4 Exch. 478;   *Huntington v. Gilmore*, 14 Barb. 243, 248;   *Spencer v. Vance*, 57 Mo. 429; *Case v. Dennison*, 9 R. I. 90;   *Delmotte v. Taylor*, (1 Redf.) 5 N. Y. 417;   *Farquharson v. Cave*, 2 Collier's Ch. 366.

The conversation on Saturday was not only a gift of money, but a provision by parol for buying land, conveying away land, putting into possession of land, paying his funeral expenses and partition of money.   Manifestly, this whole provision was testamentary in its character, and that part in reference to buying the interest of Mrs. Kirtley in land, and that part directing the making of a deed to Lucy Ann (Broddus) for the farm in Jackson county, could not be enforced, and have no binding validity.   But the whole arrangement must be sustained and enforced, or all fall together.   It cannot be supposed that the intestate intended part of the arrangement to be carried out, while the bal-

ance failed. But one part was as valid as the other, and the whole was a nullity. *McGrath v. Reynolds*, 116 Mass. 566, 569. But the very language used by the intestate shows that there was no authority in Charles to take possession of the money in the lifetime of Wm. D. McCord, for he said " that in case he should not get well, to take the money," etc. So there could not, under this authority, be any delivery in the lifetime of the deceased, in order to constitute a gift *mortis causa*. *Kenney v. Pub. Admr.*, 2 Bradf. (N. Y.) 319; 1 Story Eq. Jur., §§ 606, 606 a; 2 Kent Com., 445.

There is no pretense of a separate delivery to Charles W. McCord of the $1,400 claimed by him, but only a delivery of $7,700, out of which he was to distribute to himself $1,400 ; and that delivery was to him, as agent of the alleged donor, Wm. D. McCord. So the subject of the alleged gift to him—$1,400—was not delivered to him. For if there was no valid delivery of the whole sum of $7,600, as gifts *mortis causa*, it will be hardly claimed that a part of such sum, $1,400, was delivered as a gift, *mortis causa*, to Charles, himself.

HENRY, J.—This is a suit by plaintiff, originally against Charles McCord, to recover the sum of $8,000, which, it is alleged, was the property of plaintiff's intestate, and was wrongfully taken possession of by Charles McCord, and converted to his own use. After the death of the intestate, the money was equally divided by Charles McCord between himself and his co-defendants, who, on their motion, over plaintiff's objection, were made parties defendant to the suit. Charles McCord answers, in substance, that the intestate, his father, who was aged and infirm, and in daily apprehension of death, in his last illness delivered to defendant the sum of $1,400, to keep as his own, in case of the donor's death, and the same amount for each of his children, Benjamin, Martha, Sarah and Mary, to be delivered to them respectively, in the event of his death,

and that after his father's death, he made the distribution as directed. The answer of his co-defendants was substantially the same, and the replication was a general denial. The trial of the cause resulted in a judgment for plaintiff against Charles McCord, from which defendants have appealed.

It seems that there was no judgment for or against Charles McCord's co-defendants, and all that appears is, that the court found that they were not necessary parties.

The only one of the numerous questions raised on the trial and argued in the briefs of counsel, which we deem it necessary to pass upon, is whether the intestate made a gift of the money in controversy to defendant, as alleged in the answer; in other words, whether there was a *donatio causa mortis*.

The defendant Charles McCord testified as follows : I was at home ; pa died Tuesday morning; he had been at my house two or three months; he had $7,700 at my house ; I saw the $7,700 when he gave it to me on Monday about a week before he died ; he handed the package of money to me and told me to take care of it for him; he took it from under the head of his bed; it was wrapped in brown paper and securely tied; my wife was in the room at the time, and I just gave it to her and told her to put it away ; I gave it to my wife to take care of; I think it was on Saturday before his death, I had gone to the timber, and I sent for a doctor to see him ; the doctor came while I was away; doctor was going away when I returned ; he told me that he could not do anything for him ; I went up to the room; no one was present; I spoke to him and asked him how he felt about dying; he told me that he would rather live, but that he was ready, that his business was all arranged with the exception of the money ; I called my wife into the room. He said that in case he should not get well to take the money, and, after paying the funeral expenses, which he did not want to cost less than $100, then to pay to mother the $600 for her lifetime interest in

the Kirtley farm, and put Mrs. Kirtley in possession of her farm, then to divide the balance equally between the five —Martha, Mary and Sarah, Frank and myself. He then said to join in and make Lucy Ann a deed to her farm in Jackson county. I believe I asked him then what he wished me to do with the fifty-five acre tract, the little farm in Jackson county. He said to sell it and pay expenses or debts or something; he was aware of the fact that he would not get well; he died on Tuesday next at eleven o'clock a. m.; he did not get out of bed again except to the chamber. I carried the instructions out. On the day of the funeral I told Robinson, at Lexington, that I wanted to see them before they left town; in the meantime brother had left town, also Mrs. Kirtley; I told Robinson and wife and Hill and wife what pa's instructions were, and when it was convenient I would meet them at Robinson's or Kirtley's and distribute the money; that I had the money at home; a week or ten days after this I sent a note to Frank to meet me at Robinson's; I met them, except Frank, at Robinson's and delivered the money and took their receipts; I gave them $1,400 each. I paid mother the $600. I paid his funeral expenses.

The testimony of Mrs. Frances McCord, wife of Charles McCord, was in substance the same as that of her husband. The court admitted this testimony, but afterward declared, that Charles McCord and wife were not competent witnesses and excluded it.

If what was testified to by McCord and wife, who were the only witnesses to prove the gift, does not estab-

1. DONATIO CAUSA MORTIS. lish a *donatio causa mortis*, then even if the court erred in rejecting their testimony, the judgment should be affirmed, because it is not claimed that there was a gift *inter vivos*, and no title, except by gift, is asserted. The distinctions on the subject of gifts of this character, are finely drawn, and a conflict is frequently declared between the authorities when it is more apparent than real. To constitute such a gift, it must be made in

the last illness of the donor, or in contemplation and expectation of death. There must be a delivery of the subject by the donor, and it is " defeasible by reclamation, the contingency of survivorship, or deliverance from peril." 2 Kent Com., 444; *Nicholas v. Adams,* 2 Whart. 17; *Walter v. Ford,* 74 Mo. 195. It must be a delivery as a gift, and such a delivery, as in case of a gift *inter vivos* would invest the donee with the title to the subject of the gift.

In the case at bar the delivery actually made was not in execution or contemplation of a gift, so far as the evidence discloses. It was delivered to Charles McCord to hold as a bailee, and the language of the intestate, in the last interview he had with his son on the subject, was in substance, "After my death take it." The exact words were: " If I should not get well, take the money," etc. It was not: " Take the money, and, if I get well," make the disposition of the property I have directed.

And it will be observed that he not only attempted to make a testamentary disposition of the money, but of all the property he possessed. He directed that a deed should be made to his daughter of a tract of land in Jackson county; that not less than $100 of the money should be expended for his funeral expenses; that $600 should be given to his wife for her life interest in the Kirtley farm, of which Mrs. Kirtley was to be put in possession. It was a nuncupative will, made without the observance of the formalities required by the statute, and bequeathing an amount largely in excess of that of which the statute authorizes a disposition in that manner. If such a transaction is to be held a *donatio causa mortis,* the section of the statute in relation to nuncupative wills, and that requiring other wills to be in writing, signed by the testator, etc., have no force whatever.

All the statements with respect to the disposition of his property, made by the intestate, and testified to by McCord and wife, are to be taken as constituting one transaction. We can no more sever what was said in relation

to the cash, from what was said concerning the farms, and $600 to the wife, and funeral expenses, than one of those items can be dissevered from the other. Each was not a single transaction, standing alone, but all together constituted an entirety and were a testamentary disposition of all the property he owned, so far as the evidence shows, and even providing for the payment of debts, by directing the sale of the fifty-five acre tract for that purpose.

In the view we take of the case it is unnecessary to pass upon the competency of Charles McCord and wife as witnesses, and we, therefore, decline to do so.

The court should have rendered a judgment, either for or against the co defendants of Charles McCord, or as to them dismissed the suit. As they were not necessary parties to the suit, and on their own motion were made co-defendants, for a reason which can only be conjectured, and plaintiff has not appealed, complaining that no judgment was rendered against them, we shall reverse the judgment and remand the cause, with directions to the court below to enter a judgment in favor of plaintiff on the finding against Charles McCord, and dismiss the suit as to his co-defendants. All concur.