(89 South. 275)

**REEDY v. KELLEY.    (7 Div. 186.)**

(Supreme Court of Alabama.    April 21, 1921. Rehearing Denied May 19, 1921.)

**1. Detinue ⊝⟳8—Doctrine of restoration held not applicable.**

Where a drafted man, owning a planted crop and a mule, turned over to another the crops to pay his debts, including the debt on the mule, on condition that such other should own the mule if the drafted man died in the service and the proceeds of the crops paid entirely all the debts and personal representative of the drafted man sued in detinue for the mule, the doctrine of restoration was not applicable.

**2. Gifts ⊝⟳2 — Character determined by the law where transaction occurred.**

Where a drafted man in Alabama, owing debts, turned over his crops and mule on condition that donee should pay all his debts and keep the mule if he died in the service, the character of the gift of the mule is to be determined by the law of Alabama.

**3. Gifts ⊝⟳55—By drafted man on condition of death held one causa mortis.**

Where a drafted man, owning a planted crop and a mule, turned over the crops on condition that donee should pay all his debts and should own the mule if donor died in the service, the gift, if any, was causa mortis and not inter vivos, under Code 1907, § 3392.

**4. Gifts ⊝⟳69—Condition on death in the future not valid as gift causa mortis.**

That one drafted into the army through the selective draft felt and frequently expressed the persistent apprehension that he would lose his life in the service was not sufficient to uphold a gift of a mule on condition that he died in the service, where he died in the service after a year of military training.

Appeal from Circuit Court, Cherokee County; W. W. Haralson, Judge.

Detinue for a mule by J. E. Reedy, as administrator, etc., against Bill Kelley. Judgment for defendant, and plaintiff appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

Hugh Reed, of Center, for appellant.

A soldier ordered to the seat of war is not in such imminent peril as to justify the making of a gift causa mortis. 20 Cyc. 1236. No valid gift is shown. 174 Ala. 166, 56 South. 958; 147 Ala. 189, 41 South. 854; 99 Ala. 447, 12 South. 791; 91 Ala. 243, 9 South. 165.

Hugh White, of Gadsden, for appellee.

Counsel discussess the evidence, and criticizes the authorities cited by counsel for appellant, but he cites no authorities in brief.

McCLELLAN, J. [1] This is an action of detinue, instituted by the administrator of

---

[1] 205 Ala. 115.

the estate of Porter Reedy, deceased, against the appellee, to recover a mule. In September, 1917, or a short time before then, Porter Reedy was drawn into the army of the United States through the selective draft, and, after a year's military training, died in the service of his country in France. At the time he entered the service he owned an ungathered crop and the mule in question. He felt and frequently expressed the persistent apprehension, conviction, so to speak, that he would lose his life in the service to which he was called. He owed debts, among which were notes given in the purchase of this mule. There is legally admissible evidence tending strongly to show that, upon leaving for a training camp, he delivered this mule to Kelley; that he "turned over" his crops to Kelley to gather and sell the crops and pay his debts, including the debt for the mule, and that Kelley should have, own, the mule if he (Reedy) did not return from the war. The defendant, Kelley, gathered and sold the crops and paid all of Reedy's debts, the proceeds of the crops supplying entirely the funds with which these payments were made. This fact, if not others, would serve to render inapplicable the doctrine illustrated in Walker v. L. & N. R. R. Co., 111 Ala. 233, 20 South. 358; L. & N. R. R. Co. v. Walker, differently treated, 128 Ala. 368, 30 South. 738, where (first appeal) restoration was held essential to justify a recovery in detinue by the carrier.

[2] Kelley ascribes his right and title to the mule to the gift of the animal to him by the owner, Reedy. The character and validity of this gift, if such it was, is to be determined by the laws of the state of Alabama, wherein the transaction occurred and the chattel was located. Burt v. Kimbell, 5 Port. 137; Henderson v. Adams, 35 Ala. 723; Oneil v. Oneil, 43 Mont. 505, 117 Pac. 889. Ann. Cas. 1912C, 268, 272. Code, § 3392 provides:

"Parol gifts of personal property are inoperative, until custody, control, management, and use of the property passes from the donor to the donee, and is possessed by such donee or his [donee's] agent. * * *"

Without allusion to this statute, this court, in McHugh v. O'Connor, 91 Ala. 243, 9 South. 165; Jones v. Weakley, 99 Ala. 441, 12 South. 420, 19 L. R. A. 700, 42 Am. St. Rep. 84, has stated its effect, at least in respect of one essential, viz. that there must be surrender to the donee of the dominion over the subject of the donation.

[3, 4] The evidence in this record excludes the characterization of this transaction as a gift inter vivos of the mule to Kelley. There was, as appears, no intention on the part of Reedy to part with the absolute, unconditional, irrevocable right to the mule, and to invest finally, at once, the title in Kelley. Smith v. Dorsey, 38 Ind. 451, 10 Am.

Rep. 118, 120; Wheeler v. Armstrong, 164 Ala. 442, 451, 51 South. 268, citing earlier decisions. So the defendant's right to the mule must result (if at all) from a legally perfected gift causa mortis.

"It is absolutely essential to the existence of a gift causa mortis that it be made in expectation or contemplation of the near approach of the death of the donor at the time of the gift, and death must ensue." 99 Am. St. Rep. pp. 905, 906; Freeman's note; Barnes v. Barnes, 174 Ala. 166, 56 South. 958.

This necessary condition is not afforded by a general, though natural, apprehension consequent upon the fact that the alleged donor is going to a dangerous place, and might not return therefrom.

"A vague and general impression that death may occur from those casualties which attend all human affairs, but which are still too remote and uncertain to be regarded as objects of present contemplation and apprehended danger, is not sufficient to sustain a gift" causa mortis. Smith v. Dorsey, 38 Ind. 451, 460, 10 Am. Rep. 118, 125; 99 Am. St. Rep. pp. 905, 906; 12 R. C. L. pp. 962, 963.

Such is the doctrine approved in Barnes v. Barnes, 174 Ala. 166, 56 South 958. The death contemplated or apprehended must be impending, imminent, to afford this prerequisite to a gift causa mortis, though the death apprehended need not, in fact, occur within any given time. Author. supra. The natural apprehension of an alleged donor that he will lose his life in a military service into which he is entering at the time his intention to make the gift is unmistakably manifested (Jones v. Weakley, supra) is not the character or quality of apprehendedly imminent, impending danger or death that will answer the stated essential condition to a gift causa mortis. Smith v. Dorsey, 38 Ind. 451, 10 Am. Rep. 118; 12 R. C. L. p. 963; 99 Am. St. Rep. 906, citing several well-considered decisions to this effect.

Gass v. Simpson, 4 Cold. (Tenn.) 288, would approve a different conclusion, though one of the three Justices there dissented. This decision is, we think, against the weight of reason and authority, though much sound expression is to be found in its interesting discussion of the subject. It will not be amiss to recall in this connection the admonitory words of Tilghman, C. J., in Wells v. Tucker, 3 Bin. (Pa.) 370, in reference to inquiries with respect to gifts causa mortis:

"Too much care cannot be taken, in insisting on the most convincing evidence in cases of this kind; for these donations do in effect amount to a revocation pro tanto, of written wills; and, not being subject to the forms prescribed for nuncupative wills, they are certainly of a dangerous nature."

Since the evidence failed to show, in any degree, the presence at the time of a fear of

an impending, imminent peril or approach of death therefrom, no gift causa mortis was established, and it was error to allow to stand a judgment for defendant (appellee) on that theory.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.