180 So. 313

**SMITH et al. v. ESHELMAN et al.**

**2 Div. 99.**

Supreme Court of Alabama.

Jan. 13, 1938.

Rehearing Denied April 21, 1938.

Ivey F. Lewis, of Birmingham, for appellants.

Henry McDaniel, of Demopolis, for appellees.

FOSTER, Justice.

This is a bill in equity, and the opinion of the trial judge shows that its sufficiency is challenged on the ground that the facts averred do not constitute a gift causa mortis.

The facts averred which seem to control the questions are succinctly stated as follows:

"James Daniel Caddell, in expectation of death then imminent, and a patient at the Baptist Hospital at Selma, Alabama, preparing to undergo an operation, delivers to Doctor T. C. Cameron a letter Exhibit A to the Bill of Complaint, requesting Doctor Cameron to open same in case of

his (J. D. Caddell's) death, said Exhibit A being as follows:

"Exhibit A.

"10/30/31

"Dr. Cameron

"Dear Sir:

"If I die today or soon I want you to collect what claims I have in your hands and pay my debts as follows:

"H. C. Collins, $50.00, Jno. Walter Collins, $150.00, Jas. Compton, $150.00, and Mosby $175.00, Marengo Hardware Co. $3.10. Pay Dr. Harper and expenses of burial, Pay yourself, Faunsdale Drug Co. The balance pay to Sue & children & Henry Smith. Make Henry guardian of (this portion unreadable) * * * for her children. Settle with I. F. Lewis at the end of the year. He owes me 500 and the interest upon the 4100 that you have for this year, whatever will be enough to furnish my burial expenses.

"[Signed] D. J. Caddell."

"D. J. Caddell, delivered said letter to Dr. T. C. Cameron, in this paragraph already mentioned, he requested said Dr. T. C. Cameron not to open said letter until after his death, and said decedent also delivered to said Dr. T. C. Cameron, at the same time, separate and apart from said letter and not contained therein, a certain note for $3500.00 made by Ivey F. Lewis to said decedent and endorsed on the back thereof as follows: '10/23/31. In the event of my death pay to the order of Dr. T. C. Cameron. D. J. Caddell;' that said note constituted the entire estate of said decedent except a few open accounts of small value."

Caddell died from the effects of the operation on the next day following the acts just stated.

The court held that those facts did not constitute a delivery of the personal property to Dr. Cameron so as to comply with the requirements necessary to constitute a gift causa mortis, and on that ground sustained a demurrer to the bill.

That, therefore, is the question for review in this court.

The qualities of a gift causa mortis have been so often expressed, further repetition would serve no useful purpose. Barnes v. Barnes, 174 Ala. 166, 56 So. 958; Robertson v. Robertson, 147 Ala. 311, 40 So. 104, 3 L.R.A.,N.S., 774, 10 Ann.Cas. 1051; Jones v. Weakley, 99 Ala. 441, 12 So. 420, 19 L.R.A. 700, 42 Am.St.Rep. 84; and Herring v. Elliott, 218 Ala. 203, 118 So. 391.

There is no variance in the authorities as to what is necessary to constitute such a gift.

Among other things, a delivery is necessary, and constitutes an important distinguishing factor between such a gift and a testamentary act. 28 Corpus Juris 686, § 94.

The delivery may be made to a third party for the donee. 12 R.C.L. 934, § 5; 28 Corpus Juris 694; 3 A.L.R. 926; 60 A.L.R. 1059; and Jones v. Deyer, 16 Ala. 221, 225.

There is no disagreement about those principles. But the third person into whose hands the article is placed must be found from the facts to be a trustee for the donee, rather than the mere agent of the donor, whose agency is revoked by the death of the donor. Does the third person hold the possession for the donor or the possession and title for the donee, is the question usually necessary to be answered in such cases.

If the third person holds the possession for the donee, there is by that circumstance a delivery to the donee. If he holds for the donor, there is no such delivery.

There is likewise no difference among the authorities as to that statement.

The only difficulty is to find whether the facts and circumstances should be held to show the one or the other legal status.

A principle of importance, and which we think is controlling in this case, is that, if the title does not pass and was not intended to pass out of the donor until his death, the manual delivery of the property to another is not such delivery as is necessary.

True, such a gift is always subject to revocation by the express act of the donor, and is revoked by law, if he gets well of the sickness with which he was then afflicted. But the revocable nature of the gift may as well be expressed as implied. In either event it is a condition subsequent.

The donor must make the same sort of delivery as is necessary to a gift inter vivos. The only difference is that in the latter there is no defeasance expressed or implied, whereas such defeasance exists as a part of a gift causa mortis.

So that the fact that a gift is made expressly to depend for its complete effectiveness upon such a failure to revoke

expressly or by implication of law not only does not detract from it as such a gift, but that is only an expression of the existence of a quality of a gift causa mortis as defined by law. 3 A.L.R. 902.

■ So we revert to the inquiry which exists here as in all such cases of whether the donor did such act as would be sufficient to pass the possession and title out of him, subject to the defeasance without the necessity of anything else being done for that purpose.

If so, the gift was complete though the donee or the third person for him had no right to the use and enjoyment of the property until the death of the donor. Barnes v. Barnes, supra.

There is no conflict in the authorities in this respect, indeed if there is a conflict in any respect. 28 Corpus Juris 691, § 104.

It is said in 12 R.C.L. 935, § 12: "The delivery must be actual so far as the subject is capable of delivery, or otherwise it must be such delivery as the nature and situation of the subject sought to be given reasonably admits of and must clearly manifest an intention on the part of the donor to divest himself of title and possession. It has been held to be sufficient if the donor has put it in the power of the donee to take possession, and if the donee can take possession without committing a trespass."

An account for money due by one to another is not delivered under this rule by an order made by the creditor on the debtor not accepted by him, such as a check on a bank account; but a savings account may be delivered by a delivery of the passbook, or the contents of a locked box by a delivery of the key which unlocks it. Jones v. Weakley, supra, and Herring v. Elliott, supra.

Upon the basis of that principle, the Supreme Court of the United States in Basket v. Hassell, 107 U.S. 602, 2 S.Ct. 415, 423, 27 L.Ed. 500, construed a certificate of deposit in a bank and its indorsement and delivery as being "in substance, not an assignment of the fund on deposit, but a check upon the bank against a deposit, which, as is shown by all the authorities and upon the nature of the case, cannot be valid as a donatio mortis causa, even where it is payable in præsenti, unless paid or accepted while the donor is alive."

There is nothing in that case said to the effect that the valid assignment of a note is not effectual for a purpose such as here contemplated. The case was predicated on rules applicable to an assignment of a fund or a debt due by another, not an instrument which is a recognized item of property.

The court in that case did not treat the certificate of deposit as an item of property apart from the fund represented by it.

To show clearly that the court did not mean to include promissory notes as being in the same situation as that with which he was dealing, we quote as follows from that opinion: " 'As to the character of the thing given,' says Chief Justice Shaw, in Chase v. Redding, 13 Gray (Mass.) 418, 420, 'the law has undergone some changes. Originally it was limited, with some exactness, to chattels, to some object of value deliverable by the hand; then extended to securities transferable solely by delivery, as bank-notes, lottery tickets, notes payable to bearer or to order, and indorsed in blank; subsequently it has been extended to bonds and other choses in action in writing or represented by a certificate, when the entire equitable interest is assigned; and in the very latest cases on the subject in this commonwealth, it has been held that a note not negotiable, or if negotiable, not actually indorsed, but delivered, passes, with a right to use the name of the administrator of the promisee, to collect it for the donee's own use;' citing Sessions v. Moseley, 4 Cush. (Mass.) 87; Bates v. Kempton, 7 Gray (Mass.), 382; Parish v. Stone, 14 Pick. (Mass.) [198] 203 [25 Am.Dec. 378]."

■ There can be no question but that a promissory note, as such, is an item of property, subject to gift, separate from the money represented by it. Jones v. Deyer, supra.

The general rule is said in 12 R.C.L. 941, 942, § 18, to be that the delivery of a note, though without a written assignment, will constitute such a valid gift if made with the intention to transfer title. This was so held in Jones v. Deyer, 16 Ala. 221, where it was also held that the note could be given causa mortis and delivered to a third person for the donee, if the latter retained the possession up to the time of the donor's death. 28 Corpus Juris 699, 700.

It is perfectly clear that the conclusion in Basket v. Hassell, supra, could not under those authorities be extended to a promissory note, and was not so intended. Its argument and reasoning make it applicable only where the donor did no act sufficient to pass title and possession of the article sought to be donated, there said to be a fund in bank.

■ Of bank deposits, it is said that they are the subject of such gifts when delivery

is sufficient to confer on the donee the present right to the fund. Jones v. Weakley, supra; 29 Corpus Juris 701. This means, of course, subject to the revocation which is incident to such a gift.

 The indorsement and delivery of the note to Dr. Cameron passed the title and possession to him. The terms of the indorsement and the letter which went with it merely show that the transaction was causa mortis, and that he was to act as trustee for certain named donees, of which he, himself, was one, though such acts were not to be done until the donor died.

The courts ordinarily indulge a presumption that the person to whom delivery is made takes as a trustee for the donee. In re White's Estate, 129 Wash. 544, 225 P. 415; see the note in 60 A.L.R. 1060, referring to that case.

The donor was under the circumstances required to do nothing after he made the indorsement and delivered the note to Dr. Cameron to make complete a transfer of the title in the note to him, the actual possession of which was also passed to him.

We have mentioned the beneficiaries of the trust as donees. This is true to a large extent, but not wholly so. Some of them are creditors: in fact, the trustee himself is named as one of them.

As pointed out in 12 R.C.L. 930, if there is a consideration, it is not a gift, but a consideration subjects it to construction as another form of transaction than a gift; and that though a gift must be presently effective to pass title, not so when there is a valuable consideration. Moreover, an agency in which the agent has a personal financial interest, 2 Corpus Juris Secundum, Agency, pp. 1160, 1161, § 75 C and D, note 40, is not terminated by the death of the principal, if there has been such a transfer that the agent can exercise the power in his own name, 2 Corpus Juris Secundum, Agency, p. 1175, § 86 (2), as when given to secure or pay a debt, 2 Am.Jur. p. 65, § 80; Reedy v. Kelley, 206 Ala. 132, 89 So. 275.

Whether the transaction be controlled by the principles applicable to gifts causa mortis, or to contracts creating a trust upon a valuable consideration, or an agency coupled with an interest, it was not revoked by the death of the grantor.

It follows that the demurrer to the bill should not have been sustained on the ground which we have discussed, and which was the predicate of the decree of the trial court.

Reversed and remanded.

ANDERSON, C. J., and THOMAS, BOULDIN, and BROWN, JJ., concur.

GARDNER and KNIGHT, JJ., dissent.

GARDNER, Justice (dissenting).

I regret my inability to concur in the majority opinion in this case. With the general legal principles therein announced I am in full accord. The divergence of views arises upon their application to the case in hand.

In Drew v. Hagerty, 81 Me. 231, 17 A. 63, 64, 3 L.R.A. 230, 10 Am.St.Rep. 255, cited with approval in Barnes v. Barnes, 174 Ala. 166, 56 So. 958, 959, is this observation: "Gifts causa mortis ought not to be encouraged. They are often sustained by fraud and perjury. It was an attempt to sustain such a gift by fraud and perjury that led to the enactment of the statute for the prevention of fraud and perjury. * * It is far better that occasionally a gift of this kind should fail than that the rules of law be so relaxed as to encourage fraud and perjury."

And this thought is in harmony with the general current of authority, 12 R.C.L. 956; 28 Corpus Juris 686, as well as those of our own. Barnes v. Barnes, supra; Collins v. Baxter, 231 Ala. 247, 164 So. 61, requiring strict proof.

And it is important that this rule be observed, for it was for the protection of estates of deceased persons, and to prevent fraud and perjury, that our statutes have so carefully guarded this character of disposition of property.

A will must be in writing and attested by two witnesses. Section 10598, Code. However carefully drawn, and however honestly and openly attested by one witness, it will not suffice, and the testator's clear intention cannot be fulfilled. And as to unwritten and nuncupative wills there are restrictive conditions prescribed by statute, confined to personal property of value not exceeding $500. Sections 10602, 10603, Code of 1923.

Of course all of this is quite familiar, but some of the cases refer to these matters as indicative of the reason of the strictness of the rule. Clearly enough this court favored no relaxation in that regard. Barnes v. Barnes, supra.

There the donee already had the possession with knowledge and consent of the donor, and was told to keep them and reiterated the statement after the donee had offered to hand the papers back. Said the donor: "You keep them; I have been thinking for some time, for two weeks, to let you have the papers to take care of. You keep them. You keep them; collect the money. You take your half, and give the other half to Jesse, provided I don't come back." The delivery was held insufficient and the gift failed. The court quoted approvingly the following rule: "Where a person delivers property to his own agent or bailee, and, without absolutely surrendering dominion over it, directs that, in the event of his death, it shall be delivered to an intended donee, the transaction is regarded as an attempted testamentary disposition." And the cases cited in Barnes v. Barnes, supra, clearly indicate the judicial thought then prevailing in this court.

As an illustration, take the case of Walter v. Ford, 74 Mo. 195, 41 Am.Rep. 312. There Walter, the deceased, delivered to Ford four checks duly signed with the payees named therein, with directions to deliver them to the payees if he, Walter, should die, but, if he recovered, to return them to him. The court said: "All the authorities agree that there must be an actual delivery of the subject of the gift by the donor. It only differs from a gift inter vivos, in that it is 'defeasible by reclamation, the contingency of survivorship, or deliverance from peril.' Nicholas v. Adams, 2 Whart. [Pa.] 17. Was there a delivery of the subject of the gift to the payees of the check by Walter in his lifetime? His injunctions to Ford were that they were not to be delivered unless the donor died, and were to be held by Ford to be redelivered to the donor, if he recovered. Ford was the agent of Walter and bound to obey his instructions, and so doing, could not have delivered the checks to any one while Walter lived. If they had been given to Ford to be held for the payees at all events, the authorities cited to show that a delivery to an agent or trustee of the beneficiaries is a sufficient delivery, would be in point, but that is not this case. The checks were given to Ford, not to be delivered in the lifetime of Walter, but after his death. It was in the nature of a testamentary disposition, and possessed none of the elements of a donatio causa mortis."

And in Smith v. Ferguson, 90 Ind. 229, 46 Am.Rep. 216, the gift failed for the reason that it did not show that the deceased "parted, or intended to part, *during her lifetime,* [italics supplied] by gift inter vivos or causa mortis, with her title to or right to the possession of the notes in controversy or the proceeds thereof. Notwithstanding all that was said or done by or between her and the appellee, of and concerning such notes or their proceeds, they remained her property and estate, we think, until and at the moment of her death."

Another interesting case cited in Barnes v. Barnes, supra, is that of McCord's Adm'r v. McCord, 77 Mo. 166, 46 Am.Rep. 12, wherein the court said, speaking of the question of delivery: "It must be a delivery as a gift, and such a delivery, as in case of a gift inter vivos would invest the donee with the title to the subject of the gift." There the deceased gave other directions as to the management of his affairs, just as in this case, and the court concluded with the observation: "If such a transaction is to be held a donatio causa mortis, the section of the statute in relation to nuncupative wills, and that requiring other wills to be in writing, signed by the testator, etc., have no force whatever."

But perhaps the clearest and most able treatment of the subject is found in Basket v. Hassell, 107 U.S. 602, 609, 2 S.Ct. 415, 27 L.Ed. 500, quoted and approved by this court in Barnes v. Barnes, supra. The majority opinion would distinguish the case for the reason it involved the indorsement of a deposit slip rather than a note. But the opinion in the Basket Case expressly discloses the same principle is applicable to notes, as is shown by the following excerpt from the opinion on page 616 of 107 U.S., on page 424 of 2 S.Ct.: "The case is not distinguishable from Mitchell v. Smith, 4 De Gex, J. & S. 422, where the indorsement upon promissory notes claimed as a gift was, 'I bequeath—pay the within contents to Simon Smith, or his order, at my death.' Lord Justice Turner said: 'In order to render the indorsement and delivery of a promissory note effectual they must be such as to enable the indorsee himself to indorse and negotiate the note. That the respondent, Simon Smith, could not have done here during the testator's life.' It was accordingly held that the disposition of the notes was testamentary and invalid."

Certainly the quotation from the Basket Case, supra, found in the majority opinion, in no wise reflects upon this express statement of the court. Indeed, the value of the Basket Case is in the lucid discussion of the

fundamental and underlying principle of a gift causa mortis. It demonstrates beyond all doubt that upon the question of delivery there is no distinction between a gift inter vivos and one causa mortis. They differ only in these respects. A gift causa mortis is subject to be revoked by the donor, or by his surviving the apprehended peril, or out-living, the donee, or by a deficiency of as-sets necessary to pay the debts of the de-ceased donor. The opinion then proceeds: "These conditions are the only qualifications that distinguish gifts mortis causa and inter vivos. On the other hand, if the gift does not take effect as an executed and complete transfer to the donee of possession and title, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only if made and proved as a will." The court proceeds to point out that the de-livery of a chose in action must be such as divests the donor of all present control and dominion over it, absolutely and irre-vocably in case of gifts inter vivos, but upon recognized conditions subsequent, in case of gifts mortis causa; and that a delivery which does not confer upon the donee the present right to reduce the fund into pos-session by enforcing the obligation accord-ing to its terms will not suffice. A delivery, in terms, which confers upon the donee power to control the fund only after the death of the donor, when by the instrument itself it is presently payable, is testamentary in character and not good as a gift.

The facts of the Basket Case, supra, were as follows: One Chaney had in his posses-sion a time certificate of deposit in excess of $23,000 in the bank, which during his last sickness, and in apprehension of death, he delivered to Martin Basket, with the fol-lowing indorsement thereon: "Pay to Mar-tin Basket, of Henderson, Ky.; no one else; then, not till my death. My life seems to be uncertain. I may live through this spell. Then I will attend to it myself. H. M. Chaney." The litigation was between Bas-ket, the donee and who held the certificate when the donor died, and the administrator of the donor's estate. The fund went to the administrator, and the clear purpose of the donor was defeated.

The majority opinion in the instant case makes reference to the right of revocation on the part of the donor. But that is one of the conditions subsequent to such gifts. It bears no relation to conditions precedent that there shall be such a delivery as to pass from the donor all right and dominion over the subject matter of the gift during his lifetime. The authorities hold the dominion and control and title must pass to the donee during the lifetime of the do-nor.

We would emphasize the words *during the lifetime of the donor,* a part of the un-derlying principle of law that we feel the prevailing opinion has overlooked.

The Basket Case, supra, answers all of this in the concluding paragraph of the opinion as follows: "It cannot be said that the condition in the indorsement which for-bade payment until the donor's death was merely the condition attached by the law to every such gift; because the condition which inheres in the gift mortis causa is a subsequent condition, that the subject of the gift shall be returned if the gift fails by re-vocation. In the mean time the gift is ex-ecuted, the title has vested, the dominion and control of the donor has passed to the donee. While here the condition annexed by the donor to his gift is a condition pre-cedent which must happen before it becomes a gift, and, as the contingency contemplated is the donor's death, the gift cannot be exe-cuted in his lifetime, and consequently, can never take effect."

The authorities all agree that, as the cir-cumstances under which such gifts are made necessarily vary, each case must be deter-mined upon its own peculiar facts and cir-cumstances. 12 R.C.L. 961; 28 Corpus Juris 691. Numerous cases found cited in the notes to 60 A.L.R. 1055, 40 A.L.R. 1250, and 3 A.L.R. 902, have been examined.

Perhaps that of Duryea v. Harvey, 183 Mass. 429, 67 N.E. 351, is here more nearly in point. The decision is by a court of high repute, but it appears to be here ignored. There, as here, there was involved an in-strument which was a written promise to pay by one Harvey to deceased, Simpson. By separate instruments Simpson assigned the same to Miss Duryea, and ordered the amounts paid to her, in one of them saying: "Whether I am alive or dead." The papers were placed in a sealed envelope and deliver-ed by Simpson to one Scheider and Duryea was the intended donee.

In the instant case the papers were also in a sealed envelope, where was the letter of instructions, all save the Lewis note handed to Dr. Cameron simultaneously with the sealed letter, and the directions in the sealed letter made specific reference to the Lewis note. It is of course clear, and not otherwise insisted, that the delivery of the Lewis note and the letter constituted one

transaction, and the fact therefore that this note was not also inclosed in the letter is a matter of no consequence. The Lewis note bore the following indorsement: "10/23/31. In the event of my death pay to the order of Dr. T. C. Cameron. D. J. Caddell." Upon the delivery of the letter to Dr. Cameron, decedent requested it not to be opened until after his death.

So, likewise, in the Duryea Case, supra, the papers were in a sealed envelope and delivered by decedent to Scheider, with Duryea the intended donee, and on the envelope was written: "To be opened by Jacob Scheider * * * or Miss May Duryea, * * * only by my direction or on my death."

It appears, therefore, that the similarity between the two cases is extremely close, for, clearly, when Caddell handed the sealed envelope with accounts and directions not to be opened until after his death, it was in substance and effect exactly what Simpson wrote on the back of the envelope in the Duryea Case, supra. The donor no more lost dominion and control of the papers *during his lifetime* in the one case than the other. The Massachusetts court, under the circumstances above outlined, answering the insistence there was a gift inter vivos, said: "From the language used by him, it is plain that he did not intend that the envelope should be opened during his life without further directions from him. There was no delivery to the plaintiff, or to Scheider for her. Scheider held the papers during the life of Simpson subject to his orders, and not for the plaintiff. * * * There being no delivery during his life to the plaintiff, or to anybody for her, there was no gift inter vivos."

And answering the contention that the gift may be upheld as one causa mortis, the court continued:

"Here, however, as elsewhere in the case, the lack of delivery to the donee, or to some one for her, passing the title to her during the lifetime of the donor, is fatal. In the case of a gift mortis causa, as well as in that of a gift inter vivos, such a delivery is necessary to the validity of the gift. In Basket v. Hassell, 107 U.S. 602, 609, 2 S.Ct. 415, 27 L.Ed. 500, Matthews, J., in the course of an elaborate and instructive opinion upon this point, uses this language: 'A donatio mortis causa must be completely executed, precisely as required in the case of gifts inter vivos, subject to be divested by the happening of any of the conditions subsequent; that is,

upon actual revocation of the donor or by the donor's surviving the apprehended peril of outliving the donee, or by the occurrence of a deficiency of assets necessary to pay the debts of the deceased donor. These conditions are the only qualifications that distinguish gifts mortis causa and inter vivos. On the other hand, if the gift does not take effect as an executed and complete transfer to the donee of possession and title, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only if made and proved as a will.' This principle has been frequently recognized in our own decisions, McGrath v. Reynolds, 116 Mass. 566, and cases cited, and is sustained by the great weight of authority. A good collection of the cases is contained in 14 Am. & Eng. Ency. of Law (2d Ed.) p. 1056-1058. While the delivery may be made by the donor to some one for the donee, and in such a case is good even although not transmitted to the donee until after the death of the donor, still the delivery must be such as to transfer the title during the lifetime of the donor; a title defeasible, it is true, but complete in the donee until so defeated; the only difference in this respect between the gift inter vivos and the gift mortis causa being that the former is indefeasible, while the latter is defeasible.

"It follows that the intention of the deceased cannot be carried out upon the ground of a gift or contract. So far as the act related to what should take place after his decease, it was of a testamentary character, and, not being attested as required by law, it must fail of its purpose as such."

If this is a sound decision, it controls this case, and I respectfully submit it is sound and based upon the fundamental principle of gifts causa mortis, that is, that delivery must be such as to pass dominion and control and the title from the donor *during his lifetime*. There are no authorities cited in the prevailing opinion here to sustain the conclusion reached on the peculiar circumstances of this case, and, indeed, our search discloses none.

On the other hand, a contrary view is sustained in principle in the Basket Case, supra, and altogether in the Duryea Case, supra, from Massachusetts.

True, the majority holding carries out the purpose of the donor, but a gift is more than a purpose to give, however clear and well settled the purpose may be. As said in Walsh's Appeal, 122 Pa. 177, 15 A. 470, 1 L.R.A. 535, 9 Am.St.Rep. 83, cited in our

Barnes Case, supra: "It is a purpose executed." It cannot be doubted that during the lifetime of Caddell he still held dominion and control over these papers, and that Dr. Cameron held them, during that period, only as his bailee. What was to be done could only take place after his death, and was of testamentary character only.

. The purpose of the donor should not be carried out at the sacrifice of so salutary a principle underlying gifts causa mortis, nor should the field for such gifts be thus enlarged.

A reading of the directions in the letter to Dr. Cameron will readily disclose how closely they favor directions in a will. Cameron held the notes and accounts as agent of Caddell, to distribute the proceeds of their collection pursuant to given directions, as said in Taylor v. Harmison, 179 Ill. 137, 53 N.E. 584, 585, "for the purpose of obviating an administration of his estate."

I forego further discussion. But the decision appears to be upon a matter of so great importance I have felt impelled, at too great length I confess, to state my views.

I respectfully dissent, and am authorized to state that Mr. Justice KNIGHT concurs in the foregoing opinion.