I. Facts
Donald R. Porter ("Donald Sr.") and Olga Porter ("Olga") had seven children: Donald, Teddy, Cecil, Shari, Stephen, Marc, and Andrew. Donald Sr. and Olga lived in Gallion and owned real estate located in Hale and Marengo Counties. Donald Sr. died in 1976. Under his will, part of the real estate was to become subject to a trust for the life of Olga ("the Porter Family Trust"), and at her death the remainder was to pass to the seven children as tenants in common.
Cecil had served as trustee of the Porter Family Trust, but in 1999, as part of the settlement of a lawsuit between Cecil and Stephen concerning the trust, Cecil paid $28,400 into the trust and resigned as trustee, at which point Stephen and Marc assumed the roles of cotrustees of the trust.
Olga died on June 27, 2001. By her will, executed April 22, 1986, her portion of the real estate passed to the seven children as tenants in common. Another provision of her will addressed her children's indebtedness to her:
 "Item III "FORGIVENESS OF DEBT
"If any of my children or their estate or the beneficiaries thereof shall be indebted to me in any amount at my death, whether such debt shall be evidenced *Page 986 
by note, mortgage or otherwise, I direct and require that all of such indebtedness and all interest thereon be forgiven and cancelled in its entirety, it being my intention by this devise to relieve any of my children and their estate and the beneficiaries thereof of any and every obligation to repay said indebtedness or any part thereof or any interest thereon. I direct that any such forgiveness of any indebtedness, including any interest thereon, shall be considered as satisfaction and shall be charged against such child or his or her estate or the beneficiaries thereof, and the amount of such debt so forgiven shall be deducted from the devises herein given to such child."
In March 2000, Olga sold the family beach house. Of the proceeds from the sale, Olga sent $160,000 to Stephen and $140,000 to Marc to invest for her. Marc placed her $140,000 in Porter Capital and sent Olga a monthly check representing the interest earned. Stephen, who was a resident of California, used her money, along with some of his own, to make a down payment on a piece of property in California, for which he paid $900,000. Stephen sold this property in September 2000, at which time Olga's interest in the property had appreciated to $285,000. With the proceeds of that sale, Stephen purchased another piece of property for $1,600,000; the property produces over $80,000 in annual income. At the time of Olga's death, her interest in that property was $346,000.
After Olga's death, Marc returned Olga's $140,000 investment to her estate. However, Stephen did not return Olga's original investment or the appreciated amount. As justification for keeping the money, he produced a handwritten letter Olga had sent to him:
 "Mrs. Olga L. Porter Black Warrior Farms Gallion, AL 36742 "September 26, 2000
"Dear Steve —
"Just a note to let you know I appreciate your investing the money for me and know you will take care of it for me —
"However, should any thing happen to me I want you to keep the balance for all you have done for me in the past —
"Will check with you after October 7th —
"My love to all,
 "Olga Porter"
The reference to October 7 apparently relates to a cruise she was taking between September 26 and October 7, 2000. Apparently no party contests the validity or genuineness of the letter. However, the appellees argue that Olga's phrasing "should anything happen to me" related only to the cruise and not to anything occurring after that.
Olga's will was probated in Jefferson County, and the estate was distributed as directed. Stephen had executed a disclaimer of his share of the estate, so his 1/7 share was divided equally among his three children, Donald, Christopher, and Ashley.
In January 2002 Olga's children, including Stephen, formed a limited liability company known as Black Warrior Farms, L.L.C., for the purpose of depositing, holding, and liquidating property and funds disbursed from the estate. Each of Olga's children is a member of Black Warrior Farms, except that because Stephen has disclaimed his 1/7 interest in the estate, Stephen's three children each hold a 1/21 interest in Black Warrior Farms. Marc serves as the managing member of Black Warrior Farms.
In January 2004, the funds held by Black Warrior Farms were distributed. Stephen's three children each received $23,492.25, representing an amount less than their 1/21 share because of Stephen's alleged failure to provide a full accounting of his stewardship of the Porter Family Trust and his refusal to pay into Olga's estate the money Olga had entrusted to *Page 987 
him for investment. For the same reasons, no distribution was made to Stephen.
On April 9, 2004, Black Warrior Farms and Marc sued Stephen, alleging that Stephen had not returned to the estate the $160,000[1] Olga had given him and that an accounting was necessary to determine the amount to which each of the beneficiaries is entitled under Olga's will and under the Porter Family Trust. Black Warrior Farms and Marc also alleged that Stephen had failed to provide a full accounting of his stewardship of the cash account he managed as cotrustee of the Porter Family Trust established by his father. They asked the trial court to enter a judgment declaring the amount, if any, Black Warrior Farms should pay Stephen and the amount in damages and costs to which Black Warrior Farms and Marc are entitled in the resolution of this matter and granting Black Warrior Farms and Marc such other, further, or different relief as the court may deem appropriate.
In his answer, Stephen responded that the September 26, 2000, letter from Olga entitled him to keep the $160,000 and that the transfer of $9,199.83 from the Porter Family Trust to his personal account was justified and necessary to pay attorney fees related to this action. Stephen's children intervened, seeking to obtain distributions they claimed were due them from Black Warrior Farms. Stephen's other brothers and sisters joined Marc and Black Warrior Farms as plaintiffs seeking to recover from Stephen an amount equal to the appreciated amount of the $160,000 Olga had given to Stephen to invest.
On December 21, 2005, the trial court issued its order. The court found that Stephen had breached his fiduciary duty as cotrustee of the Porter Family Trust by treating trust moneys as personal funds and by not disclosing relevant information requested by Marc, as cotrustee, and other beneficiaries of the trust. The court held that Stephen's share of the distribution of funds from Black Warrior Farms should be reduced $9,199.83 because Stephen had wrongfully transferred trust funds to his own account after the Porter Family Trust was terminated. The court ruled that Stephen's claim that the transfer of $9,199.83 from the Porter Family Trust to his personal account to pay attorney fees was an appropriate use of trust funds was unjustified. The trial court further held that at the time of her death the value of the money Olga had entrusted to Stephen was $346,000 and further stated:
 "[Stephen's] argument that at his mother's death her interest passed to him by virtue of a letter written to him in September 2000 is without merit. A reasonable interpretation of the letter is that it expressed her wishes to deal with the money held by each son if she did not return from a cruise on which she was embarking. She did return and the letter has no effect. [Stephen's] argument that the letter had testamentary effect which gave him the right to keep the money at her death the following June is without merit. The letter does not meet the standards of a will or codicil under the law of the State of Alabama where Mrs. Porter resided and penned the letter. Accordingly it is not to be given testamentary effect and the $346,000.00 value of her investment was due to be considered as part of her Estate."
After considering the amounts Stephen owed Black Warrior Farms, the Porter Family Trust, and Olga's other children and balancing those amounts against amounts due Stephen and/or his children, the trial court ruled that Black Warrior Farms and Stephen's brothers and sisters *Page 988 
were entitled to recover from Stephen $166,799.83, plus costs and expenses including attorney fees, the amounts of those costs and expenses to be determined later. Stephen and his children appealed. Because their positions and interests on this appeal are identical, Stephen and his children will be referred to collectively as "Stephen."
 II. Standard of Review
Stephen contends that the standard of review should be denovo because, he says, the case involves issues of law; the appellees argue that the standard of review is whether the trial court exceeded its discretion because, they say, the case involves issues of fact.
The facts in this case are undisputed. The basic question raised in this appeal is whether Olga's September 26, 2000, letter to Stephen constitutes a will, a codicil, or a gift. This presents a question of law; therefore, the standard of review is de novo. Duncan v. S.N., 907 So.2d 428, 430
(Ala. 2005) (stating that "questions of law and the application of the law to the particular facts are to be reviewed denovo").
 III. Issues
Stephen raises the following issues for this Court's consideration:
 (1) Whether the trial court erred in failing to apply the law of California, the state where Stephen resided, to hold that Olga's September 26, 2000, letter to Stephen constituted a gift to Stephen of the $160,000 she had entrusted to him.
 (2) Whether the trial court erred in failing to enter a judgment in favor of Stephen and his children with respect to funds from Black Warrior Farms that were withheld from Stephen or, in the case of the children, reduced rather than being distributed to Stephen and his children.
 IV. Analysis
A. Olga's Letter
Olga's 1986 will clearly stated that her children's indebtedness to her was to be forgiven upon her death but that any indebtedness was to be offset against the share of her estate each child was to receive. When Olga entrusted $160,000 to Stephen in 2000, it is clear that it was not a gift but was an investment that Stephen was to handle on her behalf.
Stephen and his children argue that Olga's letter of September 21, 2000, clearly changed the status of the $160,000 Olga had given Stephen from an investment to a gift or bequest. The trial court found that the letter was not a testamentary bequest because it "does not meet the standards of a will or codicil under the law of the State of Alabama where Mrs. Porter resided and penned the letter." Rather, the trial court said: "A reasonable interpretation of the letter is that it expressed her wishes to deal with the money held by each son if she did not return from a cruise on which she was embarking." However, she did return. Although the trial court did not use the termcausa mortis, it seems to be saying that the letter was, at most, either a gift conditioned upon Olga's failure to return from the cruise or a gift causa mortis that became void when she returned from the cruise. In Smith v.Eshelman, 235 Ala. 588, 590, 180 So. 313, 315 (1938), this Court held that "such a gift [causa mortis] . . . is revoked by law, if he [the donor] gets well of the sickness with which he was then afflicted." See also Coley v.Walker, 680 So.2d 352, 353 (Ala.Civ.App. 1996).
As to whether Olga's letter constituted an inter vivos
gift, this Court noted in Ford v. Stinson,679 So.2d 1104, 1105 (Ala.Civ.App. 1996), the three elements that are necessary to establish an inter vivos gift: "(1) donative intent on the part of [the *Page 989 
donor], (2) effective delivery to . . . the donee, and (3) acceptance by [the donee]." Weeks v. Weeks,557 So.2d 1216, 1219 (Ala. 1989); First Alabama Bank of Montgomery v.Adams, 382 So.2d 1104, 1110-11 (Ala. 1980).[2]
The second and third elements are clearly established. Olga delivered the $160,000 to Stephen in March 2000. Stephen received, accepted, and invested the money.
The first element is more problematic. Olga did not show donative intent in March 2000 when she transferred the $160,000 to Stephen. Her purpose in transferring it to him was so that he could invest it on her behalf. The donative intent, if any, must be based on the September 26, 2000, letter. In that letter she clearly states a desire and intent that Stephen should have the money: "I want you to keep the balance for all you have done for me in the past —." But the portion of the sentence quoted above is preceded by a subordinate clause: "should any thing happen to me. . . ." This subordinate clause appears to qualify the independent clause by placing a condition on it. Furthermore, in the first paragraph of the letter Olga says: "I appreciate your investing the money for me and know you will take care of it for me" (emphasis added). The phrase "for me," especially its second appearance where it follows a future-tense verb "will take care," indicates that Olga contemplated continued ownership of the investment. Thus, the transfer of the $160,000 to Stephen, even after the September 2000 letter, cannot be considered an intervivos gift, because it is conditional and to be effective only at a future time. In other words, Olga's letter does not show the requisite donative intent.
Stephen and his children argue that if Olga's letter does not establish a gift, it does establish a testamentary bequest and should be treated as a will or codicil to her then existing will. Clearly it does not qualify as a will or codicil under Alabama law. Alabama Code 1975, § 43-8-131, provides that a will executed in Alabama is valid only if it is signed by the testator and by at least two people who witnessed the testator signing the will. Olga signed the letter, but no one witnessed her signature. The letter, therefore, cannot constitute a will or codicil under Alabama law.
Stephen and his children then contend that because Stephen resides in California and because Olga gave him the money to invest in California real estate, California, rather than Alabama, law applies. The California Probate Code provides that "a will that does not comply with Section 6110 [requirements for a valid will] is valid as a holographic will, whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator." Cal. Probate Code § 6111
(West 2006).
Stephen and his children cite Alabama caselaw to the effect that property matters are governed by the law of the state in which the property is located. Hall v. Proctor,242 Ala. 636, 642, 7 So.2d 764, 768 (1942); Phillips v.Phillips, 213 Ala. 27, 104 So. 234 (1925). But it is by no means clear that this matter is governed by California property law, because Olga did not actually own property in California. She entrusted money to Stephen, who invested it on her behalf, but when he used the money to purchase California real estate, he purchased the property in his name and *Page 990 
his wife's name. Olga's name never appeared on the deed to any of the California property.
We need not, however, reach the question whether California law applies to this case, because, even assuming for the sake of argument that California law does apply and that Olga's letter constitutes a holographic codicil to her 1986 will, it is at most a conditional codicil, effective only upon the condition that Olga not return from the cruise, which she did.
Stephen and his children further argue that when Stephen used Olga's funds as a portion of the purchase price for the California real estate, a resulting trust arose in favor of Olga as beneficiary, and a resulting trust may be terminated by the beneficiary (Olga) giving her interest to the trustee (Stephen). Stephen contends:
 "And this is what happened here: in her September 26, 2000 letter, Olga unconditionally surrendered her interest [in the $160,000] to Steve."
Stephen's and his children's brief, p. 23.
But as we have already observed, Olga's letter is not unconditional. Olga says in the letter that Stephen has invested the $160,000 "for [her]" and will continue to take care of it "for [her]." Stephen is to keep the balance "should any thing happen to [her]." Accordingly, we must conclude that even if Olga's entrusting the money to Stephen constituted a resulting trust, Olga did not effectively give the money to Stephen.
We could all wish that Olga had been more explicit concerning the disposition of this property. But there are clear and legal ways to make a gift, and there are clear and legal ways to change a will or to make a new will. Olga did none of these; therefore, her 1986 will must stand as the last clear expression of her intent concerning her estate, including the $160,000 Stephen invested for her.
B. Funds of Black Warrior Farms
Stephen and his children assert that they are entitled to a credit with respect to the funds that were deducted from Stephen's share and/or his children's shares of the distribution of funds from Black Warrior Farms because of the money he had withheld from Olga's estate in the belief that Olga had given it to him and because of the dispute concerning his handling of the funds in the Porter Family Trust.
Because we have ruled that Olga's letter to Stephen did not constitute a gift or a bequest to him of the $160,000, we conclude that the trial court's ruling that Black Warrior Farms and Stephen's siblings properly withheld that portion of the distribution of the funds in Black Warrior Farms from Stephen and his children was correct.
In regard to the portion of the money that Black Warrior Farms withheld because of Stephen's handling of the Porter Family Trust, Stephen has not provided this Court with a sufficient basis in fact and law to conclude that the trial court erred in its ruling. Because the trial court's ruling is presumed correct, we must also affirm this portion of the trial court's ruling.
 V. Conclusion
The trial court's judgment is affirmed.
AFFIRMED.
NABERS, C.J., and LYONS and SMITH, JJ., concur.
WOODALL, J., concurs in the result.
[1] The complaint mentions only the $160,000; it says nothing about any appreciated value.
[2] Although we do not here decide whether California law must govern this transaction, we note that the elements of aninter vivos gift are the same under California law.Yamaha Corp. of America v. State Bd. of Equalization,73 Cal.App.4th 338, 86 Cal.Rptr.2d 362 (1999). *Page 991